673 So.2d 1238 (1996)
JEFFERSON PARISH CLERK OF COURT HEALTH INSURANCE TRUST FUND Through its Trustee, Warren E. MOULEDOUX, Jr.
v.
FIDELITY AND DEPOSIT COMPANY OF MARYLAND, et al.
Marilyn McKINNIE
v.
CLERK OF COURT, JEFFERSON PARISH and Benefit Management Services.
Vic A. PITRE, Sr., et al
v.
OFFICE OF the CLERK OF COURT In and For the PARISH OF JEFFERSON, et al.
Karen NOLAN, Wife of/and James J. LeBLANC
v.
OFFICE OF the CLERK OF COURT In and For the PARISH OF JEFFERSON, et al.
Charlene ATTARDO, Wife of/and Frank J. Attardo, Jr.
v.
BENEFIT MANAGEMENT SERVICES, et al.
Jon A. GEGENHEIMER, Clerk of Court For the Parish of Jefferson
v.
JEFFERSON PARISH CLERK OF COURT HEALTH INSURANCE TRUST FUND.
Janos I. VOROS, M.D.
v.
Yvette O'NEILL.
Nos. 95-CA-951 to 95-CA-957.
Court of Appeal of Louisiana, Fifth Circuit.
April 30, 1996.
Rehearing Denied May 31, 1996.
*1239 Maura Z. Pelleteri, Eugene R. Preaus, New Orleans, for Plaintiff/Appellant Fidelity & Deposit Company of Maryland.
Jacob J. Amato, Jr., Stephen C. Grefer, Gretna, for Plaintiff/Appellee/Appellant Marilyn McKinnie.
*1240 Melvin Ripp, Jr., Gretna, for Plaintiffs/Appellees/Appellants Vic Pitre and Karen LeBlanc.
S. Guy deLaup, Metairie, for Plaintiff/Appellee/Appellant Jefferson Parish Clerk of Court Health Insurance Trust Fund through its trustee, Warren E. Mouledoux, Jr.
Before GOTHARD, CANNELLA and DALEY, JJ.
DALEY, Judge.
This appeal is comprised of seven consolidated suits[1] that arose out of the Jefferson Parish Clerk of Court Health Insurance Trust Fund's failure to pay health insurance benefits on behalf of a group of insured employees of the Jefferson Parish Clerk of Court under former Clerk of Court, Raoul A. "Skip" Galan, Jr.'s tenure. After a three day trial the trial court rendered judgment in favor of the Jefferson Parish Clerk of Court Health Insurance Trust Fund (Trust Fund) and against defendant Fidelity & Deposit Company of Maryland (F & D), the insurer of the Trust Fund pursuant to a Commercial Crime Policy, in the sum of $50,000.00, together with legal interest from the date of judicial demand, and all costs of the proceedings. The judgment dismissed all of the claims of the Trust Fund, Vic Pitre, Sr., Octavia Clark Pitre, Karen Nolan, wife of/ and James LeBlanc, and Marilyn McKinnie against the office of the Clerk of Court for the Parish of Jefferson.
The Trust Fund appeals the judgment in favor of the Clerk of Court and also appeals the limiting of the amount of F & D's liability to $50,000.00. In addition, the Trust Fund claims that the trial court erred in failing to hold that F & D forfeited the $50,000.00 penal sum under its policy when F & D deposited the $50,000.00 with the registry of the court pursuant to a concursus proceeding initiated by F & D.
F & D appeals, asserting as error the trial court's finding that the Trust Fund sustained covered losses and the trial court's finding of "employee dishonesty" as per the definition under F & D's Commercial Crime Policy. F *1241 & D also appeals claiming error by the trial court in admitting certain documentary evidence concerning criminal activity of Raoul A. Galan.
Individual plaintiffs, Marilyn McKinnie, Vic Pitre, and Karen LeBlanc also appeal the judgment which dismissed their claims against the Clerk of Court's office.
We affirm that portion of the trial court's judgment finding Galan liable in his capacity as Trustee of the Trust Fund. We affirm the trial court's finding of employee dishonesty and thus coverage under F & D's Commercial Crime policy. We also affirm that portion of the judgment which found only one "occurrence" or scheme of employee dishonesty. We reverse that portion of the judgment that found no liability against the office of Clerk of Court or Raoul A. Galan in his official capacity.
The history of events leading to this litigation began in July of 1987 when Galan, the duly elected Clerk of Court for the Parish of Jefferson, decided to cancel his office's health insurance policy through the Louisiana Clerks of Court Association with Equitable Life Insurance Company and establish a self-insurance plan.[2] Galan learned from Equitable that for the past year claims had greatly exceeded premiums paid, and that a premium increase (as much as 42%) and a benefit reduction was probable. Galan felt that a self-insurance program would result in a substantial savings for the Clerk of Court and his employees.
In July of 1987, the Trust Fund was established. The Plan's enabling document is entitled "Welfare Plan Trust Agreement for Employees of Jefferson Parish Clerk of Court Self Insured Fund". Galan signed as Sponsor. Galan hired Richard Camus[3] and Camus and Associates, d/b/a/ Benefit Management Services (BMS), a Camus company, to set up and administer the plan. Galan testified that Camus was an actuary whom he had met in the early 1970's in connection with other business. The Trust Fund Plan operated under the same premium and benefit schedule as had Equitable. Three trustees were appointed by Galan: himself; Gary Aspiazu, the Chief Deputy Clerk of Court; and Donald F. Crist, the Personnel Director for the Clerk of Court's Office. Two bank accounts were established in connection with the Trust Fund: the Trust Account and the Claims Account. Employees' share of premiums[4] were deducted from their paychecks and paid into the Clerk of Court Fee Fund, the operating account for the Clerk's office. Retirees who were participating in this plan paid one half their premium, the Clerk of Court the other half. Retirees' contributions were supposed to be deposited directly into the Trust Account rather than the Fee Fund. The premiums, including the Clerk's portions, were paid from the Clerk's Fee Fund into the Trust Fund's Trust Account. Administrative and management fees were paid out of the Trust Account. Claims were processed and adjusted by Camus/BMS. When claims were adjusted money would be transferred from the Trust Account into the Claims Account, whereupon checks would be issued to claimants. Only Galan had the authority to approve, issue, and sign checks from the Trust and Claims accounts.
Despite having a surplus of approximately $2 million when Galan took office in July 1984, by 1987 the Clerk's Office was experiencing severe financial constraints, which Galan attributed to a decrease in filings and the downturn in the real estate market. Almost from the Plan's inception, the Clerk's Office was nearly always late in paying the premiums from the Clerk's Fee Fund to the Trust Fund's Trust Account. Many of these late payments were made in installments instead of a lump sum per month as billed. In turn, *1242 the Trust Fund experienced difficulty in paying its claims timely or at all. Often, checks made out to beneficiaries and/or providers would accumulate awaiting the injection of money into the Claims Account from the Clerk's Fee Fund. Other claimants were not paid at all, which resulted in the instant suits. In hindsight, the record shows that the Trust Fund was inadequately funded from the beginning. Despite numerous notices to Galan by employees that the Trust Fund did not have enough money to pay its claims, premiums were never raised nor benefits adjusted during the year of the Trust Fund's existence.[5]
The Trust Fund ceased to exist as an insurance provider when Galan's successor, Jon Gegenheimer, assumed the office of Clerk of Court on July 1, 1988. Prior to his assumption of office, Gegenheimer negotiated with Equitable to provide health insurance for the office's employees beginning July 1, 1988. The new policy with Equitable excluded pre-existing conditions for the prior 60 days. This pre-existing condition exclusion affected one plaintiff, retiree Marilyn McKinnie, who was admitted to the hospital three days before the Gegenheimer administration and the Equitable coverage began. Not only did the Trust Fund not pay these expenses because of its insolvency, in addition, she was denied coverage for pre-existing conditions and medical expenses under the new Equitable policy. As a result of the above actions, suits were filed as set forth above, culminating in the present appeal.

ADMISSION OF EVIDENCE
F & D argues that the trial court erred in admitting into evidence Trust Fund Exhibits 14-22. Trust Fund Exhibits 14-20[6] pertain to the state and federal criminal proceedings involving Galan. Exhibits 21-22 are Petitions to Make Judgment Executory in civil state court suits filed by Clerk of Court Gegenheimer against Galan and Crist, respectively.
Counsel for F & D objected to the admission of exhibits 14-20 on relevancy and hearsay grounds, with the exception of Exhibit 19, which was objected to only on relevancy grounds. In brief, F & D argues that these exhibits were erroneously admitted because they were irrelevant to the instant proceeding; that under LSA Code of Evidence article 404(B), these exhibits constitute improperly admitted character evidence, in that they were not used to impeach the witness. Counsel for F & D argues that under C.E. art. 404(B), evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show that he acted in conformity therewith.
We find that the transactions and circumstances that were the basis for both the federal and state indictments concern not "other" crimes, but in fact are admissible under C.E. art. 404(B) because they "relate to conduct that constitutes an integral part of the act or transaction that is the subject of the instant proceeding." In the State's indictment, Galan pled guilty to Count 1, Malfeasance in Office, a violation of R.S. 14:134, which had eight paragraphs, two of which, paragraphs 2 and 4, specifically concerned the Health Insurance Trust Fund. Paragraphs 2 and 4 of the indictment state:
"2. Withheld employees' contributions for health insurance but failed to place those funds and/or the employees' contributions for health insurance into a self-insurance trust and/or for them as premiums to insurance company in violation of LA R.S. 13:783(F);
* * * * * *
4. Canceled group medical and health insurance and established a self-insurance program in violation of La. R.S. Title 13:783 and Louisiana Constitution Article 7, Section 14[;]"
*1243 It is clear from the record that the trial judge allowed these exhibits into evidence to establish the sequence of events and provide a foundation for these events. Galan testified as a witness at the trial. His testimony elicited much information concerning the circumstances of the Trust Fund's failure, and in that sense, the indictments and related exhibits were only cumulative evidence.
F & D objected to the admission of Trust Fund Exhibits 21 and 22. These two exhibits are Petitions to Make Judgments Executory and attached Consent Judgments from Bankruptcy Court which set forth Galan's and Crist's monetary liability in connection with defalcations found by the United States Bankruptcy Judge for unpaid medical claims. The amount of the claims is not in dispute. F & D objected to the admission of Exhibits 21 and 22 on the grounds of relevance and hearsay. Their objections were overruled by the trial court.
F & D contends that since Galan is not a party to this proceeding then any out of court admissions by Galan are hearsay. This argument, however, ignores the language of Code of Evidence art. 801(D)(3)(c). The article provides that it is not hearsay to introduce an out of court declaration where the obligation of the party against whom it is offered is derivatively based upon the obligation or duty of the declarant, when the statement would be admissible if offered against the declarant as a party. In the instant case the trial court had to determine whether Galan's conduct triggered liability on behalf of F & D. Their relationship satisfies the derivative component of Code of Evidence art. 801(D)(3)(c). The Consent Judgments approved by Galan from bankruptcy court would clearly be admissible against Galan if he were a party, and hence are admissible against F & D. Accordingly, the trial court did not err in the admission of this evidence.

JUDICIAL CONFESSION
The Trust Fund asserts admissions by F & D in their Reconventional and Third Party Demand for Concursus as well as their Motion for Summary Judgment constitute a "Judicial Confession" and accordingly, F & D should be liable at the very least for the penal sum of $50,000.00 which has already been deposited in the registry of the Court.
In April of 1993, F & D filed a Reconventional and Third Party Demand for Declaratory Judgment, Concursus, and Request for Injunctive Relief. Paragraph XXIII of F & D's Reconventional Demand states:

"F & D does not admit that the above-described conduct of Galan and Crist triggers F & D's liability to indemnify under the policy. However, in view of the number of potential claimants under the Policy, and for purposes of this action only, F & D does not contest the coverage issue. F & D further avers that it has no beneficial interest in the penal sum of the Policy, is a disinterested stakeholder and is willing and ready to make payment to the person or persons entitled to receive indemnification under the Policy. There is, however, a controversy with respect to the proper indemnitee(s) under the Policy." (Emphasis ours.)
F & D thereafter filed a Motion for Summary Judgment asking that the limits of its liability be declared to be $50,000.00. The trial court denied the Summary Judgment request of F & D based on the Trust Fund's assertion that there was a factual question with regard to the number of occurrences. The Trust Fund argued under a multiple occurrence theory that F & D should be held liable for damages exceeding $50,000.00.
After the Summary Judgment was denied, F & D filed, with court approval, an Amended Reconventional Demand. Amended paragraph XXIII read as follows:
"F & D denies that the above-described conduct of Galan and Crist triggers F & D's liability to indemnify under the Policy and re-avers each and every exception, defense and affirmative defense asserted in F & D's original answer to the Fund's petition. In accordance with La.C.C.P. Art. 4652, F & D avers that it has a beneficial interest in the penal sum of the Policy. However, F & D submits that there is a controversy with respect to the liability, if any, and proper insured under the Policy."
*1244 The Trust Fund claims F & D's original pleadings and admissions constituted judicial confession of coverage and that the trial court erred when it issued an interlocutory judgment on May 19, 1994 declaring the pleadings of F & D cannot be construed as a judicial confession and that F & D is not estopped from denying liability.
L.A.-CC. art. 1853 states:
Art. 1853. Judicial confession
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
Jurisprudence has added the requirement that a party must have relied on the declaration to his detriment before it can be a judicial confession, and that the declarations in other suits are not conclusive presumptions. Howard Trucking Co., Inc. v. Stassi, 474 So.2d 955 (La.App. 5 Cir.1985), affirmed 485 So.2d 915 (La.1985).
We agree with the trial court that the original petition did not contain a confession of liability. Likewise, F & D's Motion for Summary Judgment does not confess liability either, but it seeks to limit F & D's maximum exposure to $50,000.00. No party proved that they relied to their detriment on the position F & D stated in its original pleadings. The original Reconventional Demand and Concursus did not concede that the actions of Galan and Crist triggered F & D's liability under the policy. The trial court's Interlocutory Judgment was rendered in May of 1994. The entire matter was tried almost one year later, in April of 1995. Whatever party may have been aggrieved by the Interlocutory Judgment had more than adequate notice that coverage was going to be a contested issue at trial, and had almost one year to prepare their case. While the trial court found that F & D's pleadings did not constitute a judicial confession, F & D's pleadings clearly contained certain admissions with regard to losses.

LIABILITY OF F & D AND EXTENT OF COVERAGE

A. Covered Losses
F & D argues that it was never proved at trial that the Trust Fund suffered a "loss" due to "employee dishonesty" and, therefore, the trial court erred in finding that coverage existed under the terms of their Commercial Crime Policy. Other appellants argue that the trial court erred in limiting the scope of that coverage to one "occurrence," the limit of which is $50,000.00. We agree with the trial court's finding of employee dishonesty. We also affirm the award of $50,000.00, the policy limits based on the finding of one scheme or occurrence.
The Trust Fund purchased the Commercial Crime Policy from F & D, with the policy period commencing on January 22, 1988.[7] The following provisions of this policy are pertinent:
a. "Employee Dishonesty" in paragraph A.2 means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:
(1) Cause you to sustain loss; and also
(2) Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:
(a) The "employee"; or
(b) Any person or organization intended by the "employee" to receive that benefit.
Galan engaged in a scheme to keep insurance premium funds paid by Clerk's office employees and owed by his office in the Clerk's Fee Account Fund for use for noninsurance related expenses. This failure to timely pay the premiums owed during the policy period resulted in a direct economic *1245 benefit for the payor organization, the Clerk of Court, and a direct economic loss for the payee, the Trust Fund. The Trust Fund was unable to meet its financial obligations in a timely and complete manner in part because premiums were never paid timely and allowed to accumulate and contribute interest or investment income for the Trust Fund. Galan's misuse of premiums was a dishonest act which caused loss to the Fund.
F & D's original position, as stated in their concursus, made an unconditional tender of the $50,000.00 penal sum. F & D admitted that they had no beneficial interest in the sum and were willing and ready to make payment to the person or persons entitled to receive indemnification under the policy. This admission, while not reaching the level of a judicial confession, along with other evidence in the record supports the trial court's award of $50,000.00 against F & D.

B. Occurrence
The Commercial Crime Policy defines "occurrence" as follows:
b. "Occurrence" means all loss caused by, or involving, one or more "employees", whether the result of a single act or a series of acts.
This language is inclusive of any scheme to cause loss to the insured, and therefore we agree with the trial court that only one occurrence of employee dishonesty can be found under this definition.
Galan's acts were integral parts of a scheme to deprive the Trust Fund of current premiums, which had one direct aim: to provide Galan with additional funds to operate his office and pay noninsurance related expenditures, some of which were questionable, if not illegal. The number of claimants and/or participants in the Fund is irrelevant and immaterial to the scheme. All of Galan's acts were committed in the furtherance of the scheme. Each time he allowed the Clerk of Court to pay premiums late and then in installments, the Trust Fund incurred a loss. Galan's actions created a direct economic loss to one entity, the Fund. The losses to the claimants are indirectly related to Galan's failure to timely pay premiums, and the Fund's resultant losses, and do not constitute separate occurrences.
We agree with the trial court's finding of one occurrence under the terms of the policy.

LIABILITY OF THE CLERK OF COURT IN HIS OFFICIAL CAPACITY
The trial court found no liability on the part of the Clerk of Court in his official capacity, making the factual finding that Galan was acting in his capacity as trustee of the Health Insurance Trust Fund rather than in his capacity as Clerk of Court, when the Fund became unable to pay the claims. However, the record shows that Galan was acting in his official capacity as Clerk of Court when he created the Self Insurance Trust Fund.
Galan, in his capacity as Clerk of Court, violated a fiduciary duty to his employees when he procured health care benefits for them in a manner contrary to his statutory authority found in R.S. 13:783(F). LSA-R.S. 13:783(F) requires the Clerk of Court to contract for health insurance only with insurance companies who are authorized to do business in this state. The obvious purpose of R.S. 13:783(F) is to assure that insurers who insure Clerk of Court employees are subject to a minimum level of standards and regulations and a guaranteed reserve if the insurer becomes insolvent. Though not legally obligated to provide health insurance to his employees, once Galan made an affirmative choice to do so, he was bound to proceed within statutory authority. The Self Insurance Trust Fund was not an insurance company authorized to do business in this state. This is not analogous to the situation where Galan might have properly contracted with an authorized insurance company which later became insolvent. Galan was directly responsible for the creation and policy of the Self Insurance Plan, and had a nondelegable duty to ensure that the Plan was feasible and properly run.
Galan stood in a fiduciary relationship with his employees. This relationship was thoroughly defined in Office of the Commissioner of Insurance v. Hartford Fire Insurance Company, 623 So.2d 37 (La.App. 1 Cir.1993). There, the First Circuit said:

*1246 One is said to act in a "fiduciary capacity", when the business which he transacts, the money or property he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the part and a high degree of good faith on the other part. (emphasis ours)
Id. at p. 40.
The above definition encompasses the relationship between Galan and his employees in this matter.
Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It is the breach of a duty, statutory or nonstatutory, owed to another to protect that person from the particular harm that ensued.
Galan, through the Trust Fund, sought to self-insure his employees through the use of a third party administrator. Chapter 5 of Title 22 (LSA-R.S. 22:3031-3046) sets forth the statutory duties of an insurer and a third party administrator as between each other and to the insureds. As per R.S. 22:3031, Galan was an "insurer" and Camus/BMS was the "third party administrator". Galan, as insurer, failed to perform several affirmative statutory duties found in this chapter. Among them are his duty (not the administrator's) to determine benefits and premium rates (R.S. 22:3036), his duty to conduct semi-annual reviews of the administrator's operations (R.S. 22:3036), and his duty to timely deposit the premiums into the Trust Account (R.S. 22:3037). The record shows that Galan mailed at least two letters to the Plan's insureds telling them that their plan was one of the best in the area and would provide substantial assistance in time of need, all during the time when he was fully aware that the plan did not have money to cover issued checks to its claimants.[8]
Public officials in their official capacity are liable for the tortious conduct committed by their predecessors in office in their official capacity. Robin v. Galan, 545 So.2d 1129 (La.App. 5 Cir.1989); Bulot v. Justice, 524 So.2d 269 (La.App. 5 Cir.1988); Gegenheimer v. Galan, 920 F.2d 307 (5th Cir.1991). Because we find that Galan was acting in accordance with his authority as Clerk of Court when he canceled the group coverage with Equitable and established the health insurance Trust Fund, we hold that the Clerk of Court, in his official capacity, is responsible for the noninsured losses incurred by this plan.
Galan's action in establishing the Trust Fund to provide health insurance coverage to his employees was improper and beyond the scope of his statutory authority. Galan's acts regarding the setting up of the Trust Fund show gross negligence and/or neglect. The record is clear and replete with evidence that Galan's negligent acts, in his official capacity as Clerk of Court, contributed substantially to the Trust Fund's and individual plaintiffs' ultimate damages.

INDIVIDUAL CLAIMANTS
For the reasons assigned above, we find that the trial court erred in dismissing the individual claims of Karen LeBlanc, Vic Pitre, and Marilyn McKinnie against the Clerk of Court, in his official capacity.
We hereby find that the Clerk of Court, in his official capacity, is liable to plaintiff, Marilyn McKinnie for the amount of $4,798.48 (Stipulation as per Trust Fund Exhibit 23, representing an initial amount due of $6,397.97 less the June 2, 1992 court-ordered partial disbursement of funds of $1,599.49). McKinnie claimed an additional $24,307.00, representing expenses incurred during her illness beginning June 27, 1988, three days before Gegenheimer took office and the new Equitable coverage began. The Trust Fund Plan "claims made" language excluded this claim because the claim was not made while the trust was still providing insurance. This claim was also denied by Equitable under their pre-existing condition exclusion. We find that the Clerk of Court is not liable for this sum, as under the policy language of the Trust Fund Plan it would not have been a covered claim, regardless of the solvency of *1247 the Trust Fund. Likewise, we find that this claim is also excluded from coverage under Equitable's pre-existing condition exclusion.
We hold that the Clerk of Court, in his official capacity, is liable to plaintiffs, Vic Pitre and Octavia Clark Pitre, for the amount of $9,259.30 (Stipulation as per Trust Fund Exhibit 23, representing an initial amount due of $12,345.73 less the June 2, 1992 court-ordered partial disbursement of funds of $3,086.43).
We hold that the Clerk of Court, in his official capacity, is liable to plaintiffs, Karen Nolan, wife of/and James LeBlanc, for the amount of $2,128.35 (Stipulation as per Trust Fund Exhibit 23, representing an initial amount due of $2,851.00 less the June 2, 1992 court-ordered partial disbursement of funds of $712.75).
In their joint appellate brief, Pitre and LeBlanc contend that the Clerk of Court is liable for damages and attorneys' fees under LSA-R.S. 23:632 and R.S. 23:640, for its failure to pay wages due to them. We find both of these statutes inapplicable. LSA-R.S. 23:632 is a penal statute and is to be construed strictly; it pertains to the failure of an employer to pay wages under R.S. 23:631. The latter statute, by its clear title and language, applies to those situations where an employee is discharged or has resigned, and mandates that the employer pay the employee his last due wages within three days of the termination of employment. This section does not address the insolvency of a health insurance plan and the resultant failure to pay an employee's medical expenses.
Likewise, LSA-R.S. 23:640 addresses benefits payable under collective bargaining agreements. The record contains no evidence that a collective bargaining agreement was in place, or that the Clerk of Court's office was a "labor organization." Therefore, we deny Pitre's and LeBlanc's claims for attorneys' fees and damages.
Accordingly, for the reasons assigned above, we affirm that portion of the judgment of the trial court finding F & D liable for one occurrence under its commercial crime policy in the amount of $50,000.00. We reverse that portion of the judgment assigning no liability to the Clerk of Court, in his official capacity, and enter judgment against the Clerk of Court, in his official capacity.
IT IS ORDERED, ADJUDGED AND DECREED that the Clerk of Court for the Parish of Jefferson is hereby cast in judgment in favor of the Jefferson Parish Clerk of Court Health Insurance Trust Fund in the amount of $87,454.29, plus legal interest from the date of judicial demand. The Clerk of Court for the Parish of Jefferson is hereby cast in judgment in favor of Marilyn McKinnie in the amount of $4,798.48, plus legal interest from the date of judicial demand. The Clerk of Court for the Parish of Jefferson is hereby cast in judgment in favor of Karen Nolan, wife of/and James LeBlanc in the amount of $2,138.25, plus legal interest from the date of judicial demand. The Clerk of Court for the Parish of Jefferson is hereby cast in judgment in favor of Vic Pitre and Octavia Clark Pitre in the amount of $9,259.30, plus legal interest from the date of judicial demand.
F & D, the Jefferson Parish Clerk of Court Health Insurance Trust Fund, and the Clerk of Court for the Parish of Jefferson are to bear their own costs of this appeal. The Clerk of Court for the Parish of Jefferson is to bear the appeal costs for Marilyn McKinnie, Karen Nolan wife of/and James LeBlanc, and Vic Pitre and Octavia Clark Pitre.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] 95-CA-951 is entitled "Jefferson Parish Clerk of Court Health Insurance Trust Fund through its Trustee, Warren Mouledoux, Jr. v. Fidelity & Deposit Company of Maryland, Office of the Clerk of Court for the Parish of Jefferson, Benefit Management Services, a Division of Camus Management Services, Inc., The Succession of Richard F. Camus, Richard F. Camus, Richard F. Camus and Associates, Camus Management Services, Inc., ABC Insurance Co., Donald P. Crist and Raoul A. Galan, Jr., a/k/a Skip Galan." F & D filed a Reconventional and Third Party Demand for Declaratory Judgment, Concursus, and Injunctive relief, defendant-in reconvention being the Trust Fund, and third party defendants being the plaintiffs in 95-CA-952-956.

95-CA-952 is entitled "Marilyn McKinnie v. Clerk of Court, Jefferson Parish and Benefit Management Services."
95-CA-953 is entitled "Vic A. Pitre, Sr. individually and on behalf of the Community of Acquets and Gains, which exist (sic) between him and his wife, Octavia Clark Pitre, and Octavia Clark Pitre v. Office of the Clerk of Court in and for the Parish of Jefferson, State of Louisiana, Richard F. Camus, Individually, Richard F. Camus and Associates, Camus Management Services, Inc., and ABC Insurance Co." Plaintiffs amended their petition to name F & D as a defendant; however, F & D responded with an Exception of No Right of Action which was granted.
95-CA-954 is entitled "Karen Nolan, wife of/ and James J. LeBlanc v. Office of the Clerk of Court in and for the Parish of Jefferson, State of Louisiana, Richard F. Camus, Individually, Richard F. Camus and Associates, Camus Management Services, Inc., and ABC Insurance Co." Plaintiffs amended their petition to name F & D as a defendant; however, F & D responded with an Exception of No Right of Action which was granted.
95-CA-955 is entitled "Charlene Attardo, wife of/and Frank J. Attardo, Jr. v. Benefit Management Services, Raoul A. Galan, Jefferson Parish Clerk of Court Health Insurance Fund and Jefferson Parish Clerk of Court." F & D was named a third party defendant by the Jefferson Parish Clerk of Court; however, F & D filed an Exception of No Right of Action which was granted.
95-CA-956 is entitled "Jon A. Gegenheimer, Clerk of Court for the Parish of Jefferson v. Jefferson Parish Clerk of Court Health Insurance Trust Fund." Plaintiff John J. Walker III, an employee of the Clerk's Office under Galan, intervened in this suit to assert his claims against the Trust Fund for payment of his medical expenses.
95-CA-957 is entitled "Janos I. Voros, M.D. (A Professional Medical Corporation) v. Yvette O'Neill." O'Neill filed third party demand against Jon. A. Gegenheimer, Clerk of Court, and the Jefferson Parish Clerk of Court Health Insurance Trust Fund. O'Neill declared bankruptcy after being cast in judgment in the principal demand. Thereafter, the trustee of the bankruptcy estate was substituted as third party plaintiff.
[2] The Clerk of Court's discretionary authority to provide health insurance to his employees is found in LSA-R.S. 13:783(F).
[3] Richard Camus died during the pendency of this litigation. He was a defendant personally in several suits and several of his involved companies (Camus Management Services and Benefit Management Services) were also defendants. Counsel for these companies and Camus's succession did not participate in the trial.
[4] As per LSA-R.S. 13:783(F), the Clerk of Court paid the entire premium for employees. Employees who elected coverage for dependents paid one half that premium, the Clerk of Court the other half.
[5] Bernadette Falcon, a Clerk's Office employee whose duty it was to issue checks to claimants, testified that she advised Galan on numerous occasions that the Trust Fund did not have adequate funds to pay its claims.
[6] Exhibit 14 is Galan's State Indictment, Exhibit 15 is Galan's guilty plea transcript, Exhibit 16 is the State Sentencing Minute Entry, Exhibit 17 is the Commitment, Exhibit 18 is the United States District Court 3rd Superseding Indictment, Exhibit 19 is the United States District Court Probation/Commitment Order, and Exhibit 20 is the federal Factual Basis.
[7] This policy was later canceled by the Gegenheimer administration because it was determined that the Trust Fund's purpose no longer existed. This cancellation does not affect the issue of coverage.
[8] The Trust Fund did attempt to introduce a "cafeteria plan" in May of 1988, which allowed employees to choose between three plans with different premium/benefit levels. However, no steps were taken to resolve the inadequacy of the original trust fund plan.