732 So.2d 1270 (1999)
STATE of Louisiana, Plaintiff-Appellee,
v.
Claude LAMB, Two Hundred Sixty-One Dollars and Six Thousand Three Hundred Ninety-One Dollars, Defendant-Appellant.
No. 31,919-CA.
Court of Appeal of Louisiana, Second Circuit.
May 7, 1999.
*1271 Claude Lamb In Proper Person Defendant-Appellant.
Robert Stephen Tew, Monroe, Counsel for Plaintiff-Appellee.
Before NORRIS, BROWN and DREW, JJ.
NORRIS, Chief Judge.
In this civil forfeiture case, Claude Lamb appeals a judgment in favor of the State forfeiting $6,652 in cash seized from his possession during two 1989 arrests for possession of cocaine with the intent to distribute. For the reasons expressed, we affirm.

BACKGROUND FACTS
The instant matter has been before this court on two prior occasions, once to affirm Lamb's 30-year hard labor sentences for the criminal offenses and once to address the forfeiture issue. See, State v. Lamb, 566 So.2d 462 (La.App. 2d Cir.), writ denied, 569 So.2d 985 (1990); State v. Lamb, 26,257 (La.App.2d Cir.10/26/94), 645 So.2d 791. For purposes of the instant appeal, we reiterate the background facts of the arrests and convictions as set forth in State v. Lamb, 645 So.2d 791:
On May 2, 1989, police officers from the Metro Narcotics Unit of Ouachita Parish arrested Lamb on drug charges. At the time of the arrest, the officers seized $6,391.00 from Lamb's possession. Subsequent to the arrest, Lamb made bond and was released from jail. Then, on July 19, 1989, the police officers arrested Lamb again on drug charges. This time they seized $261.00 from his possession.
The Ouachita Parish district attorney filed a bill of information on August 2, 1989 which, after being amended on September 21, 1989, charged Lamb with one count of possession of cocaine with intent to distribute and one count of possession of twenty-eight grams or more, but less than two-hundred grams, of cocaine.
On October 25, 1989, another amended bill of information was filed, and pursuant to a plea bargain agreement, Lamb pled guilty to two counts of possession of cocaine with the intent to distribute. The plea bargain agreement did not provide for the disposition of the seized money. On January 4, 1990, the trial court sentenced Lamb to thirty years imprisonment.
Complaining only about the excessiveness of his sentence, Lamb appealed. On August 22, 1990, we affirmed. [citation omitted]. Then, on September 25, 1990, Lamb sought writs from the Louisiana Supreme Court. Two months later, November 26, 1990, the supreme court denied Lamb's writ application[.]
Prior to the denial of his writ application to the supreme court, Lamb filed a motion in October 1990 seeking a return of the evidence; the trial court eventually rendered judgment transferring ownership of the seized money to the Metro Narcotics Unit. In our prior opinion, we found those proceedings to contain numerous procedural irregularities attributable to both sides. Therefore, as a result of this "tortured procedural history," we invalidated the judgment of forfeiture, set aside "all orders granting or denying motions which have as their subject matter the property involved in this case," and remanded the matter for further proceedings.
Accordingly, on February 2, 1995, the State filed a new petition for forfeiture of the money seized from Lamb during both 1989 arrests.[1] In this petition the State alleged the money to be derivative contraband from the sale of controlled dangerous substances ("CDS") and thus, subject to *1272 forfeiture on that basis under recently repealed La. R.S. 32:1550, et seq.[2] At a contradictory hearing held on April 4, 1996, the state presented the testimony of Lamb's arresting officer, Sergeant Curt Petterson, and from the probation officer who prepared Lamb's pre-sentence investigation ("PSI"), Judy Brooks. Lamb presented no witnesses. The court ruled from the bench that the seized money was in fact contraband, but took the forfeiture issue under advisement. Ultimately, judgment was rendered ordering forfeiture of the money and distribution pursuant to former La. R.S. 32:1550.[3] This pro se appeal ensued.

JUDICIAL ADMISSION
By his first assignment, Lamb contends, in essence, that the district court erred in not returning his property based on the fact the state had confessed in an earlier petition for forfeiture that the property was noncontraband. Put otherwise, he argues the state should be precluded from now claiming that it is drug related contraband. We disagree.
The state filed in the prior forfeiture proceedings motions to dispose of the cash seized in Lamb's arrests. These both alleged that the money was noncontraband upon which no claim had been made within two years after its seizure. The state's motions were obviously and erroneously based on La. R.S. 15:41(B)(2) which provides for the disposition, at the court's discretion, of seized property no longer needed as evidence in a criminal proceeding and is unclaimed by the owner. This is the simplest method to dispose of the seized money, but was unavailable because Lamb had indeed filed a motion for the return of his property, meaning that the cash was not unclaimed.[4] Following the remand, the State filed new forfeiture proceedings, alleging that the cash was indeed contraband. Nonetheless, Lamb now contends that the state judicially confessed the cash was not contraband, thus foreclosing it from taking the opposite position in a subsequent pleading and preventing forfeiture as contraband under the now repealed provisions of La. R.S. 32:1550, et seq.
La. C.C. art. 1853 states:
A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact.
Moreover, to constitute a judicial confession the statement must be the express acknowledgment of an adverse fact, the effect of which is to waive evidence as to the subject of the admission or to withdraw the matter from issue. Farmers-Merchants Bank and Trust Co. v. St. Katherine Ins., 93-552 (La.App. 3d Cir.3/9/94), 640 So.2d 353, writ denied, 94-0841 (La.5/13/94), 641 So.2d 204. Additionally, the adverse party must have believed the fact was no longer at issue or must have relied on it, to his detriment, before it can be a judicial confession. Alexis v. Metropolitan Life Ins. Co., 604 So.2d 581 (La.1992); Jefferson Parish *1273 Clerk of Court Health Ins. Trust Fund v. Fidelity and Deposit Co. of Maryland, 95-951 (La.App. 5th Cir.4/30/96), 673 So.2d 1238; Farmers-Merchants Bank and Trust Co. v. St. Katherine Ins., supra.
In the present case, Lamb has made no showing whatsoever that he has been prejudiced by the state's initial allegation that the money seized from him was noncontraband. He simply maintains that because the state first made such a declaration, the court should return the money based on his timely motion for its return; he adds that the assistant district attorney perjured himself in filing that pleading.
This argument lacks merit. As noted, the state initially proceeded under the noncontraband provision, La. R.S. 15:41, as it was the most judicially economical method for disposing of the cash. The state's error of fact was not completely remedied until after this court reversed and remanded the judgment. Almost immediately upon remand, the state corrected the error and filed a new petition on the proper legal basis and alleging that the cash was indeed contraband. The Code of Civil Procedure prescribes liberal rules for the amendment of pleadings to correct mistakes of fact, a remedy specifically contemplated by La. C.C. art. 1853. See, La. C.C.P. arts. 1151-1156; Farmers-Merchants Bank and Trust Co. v. St. Katherine Ins., supra. Moreover, Lamb had ample opportunity to contest the state's new assertions on remand; eventually, he proceeded to a full hearing in which the state had to prove the cash was contraband under former La. R.S. 32:1550, et seq.[5] Under the circumstances, the state's allegations in a prior proceeding that was later vacated by this court and remanded with orders to start anew do not meet the criteria for judicial admission.

RETROACTIVITY OF AMENDMENT
By his second assignment, Lamb maintains that the trial court erred in basing its opinion on former La. R.S. 32:1550, et seq., as the statute was repealed after the hearing in this matter but prior to judgment. We find this argument meritless.
Lamb's arrests occurred in May and July 1989. On October 7, 1989, voters approved an amendment to La. Const. art. I, § 4 to eliminate the provision that "[p]ersonal effects, other than contraband, shall never be taken." In its place, a third paragraph was added as follows:
Personal effects shall never be taken. But the following property may be forfeited and disposed of in a civil proceeding, as provided by law: contraband drugs; property derived in whole or in part from contraband drugs; property used in the distribution, transfer, sale, felony possession, manufacture, or transportation of contraband drugs; property furnished or intended to be furnished in exchange for contraband drugs; property used or intended to be used to facilitate any of the above conduct; or other property because the above described property had been rendered unavailable.
This amendment was intended to overrule the decision in State v. Spooner, 520 So.2d 336 (La.1988), which had examined forfeiture laws in the context of criminal proceedings and placed a heavy onus on the state in proving that property should be forfeited. See, State v. Clark, 94-598 (La. App. 3d Cir.2/21/96), 670 So.2d 493, writ denied, 96-1331 (La.2/7/97), 688 So.2d 495. The amendment elevated to constitutional status the forfeiture of contraband drug property by means of a civil proceeding. It also suppressed the traditional rationale employed in Spooner, supra, that forfeiture of drug tainted property was disfavored and that the defendant in a forfeiture case must receive the same due process considerations as in a criminal *1274 proceeding. State v. Clark, supra. As a result, the legislature passed new forfeiture provisions, La. R.S. 40:2601, et seq., setting forth less onerous burdens of proof directly in the statute and treating forfeitures as civil matters. See, State v. Clark, supra; State v. $77,014, 607 So.2d 576 (La.App. 3d Cir.1992), writ denied, 612 So.2d 61 (La.1993).
In the absence of contrary legislative expression, substantive laws apply prospectively only. La. C.C. art. 6. A substantive law imposes new duties, obligations or responsibilities, or establishes new rules, rights and duties or changes existing ones. Aucoin v. State through DOTD, 97-1938, 97-1967 (La.4/24/98), 712 So.2d 62; Jackson v. Beasley, 30,359 (La. App. 2d Cir.4/8/98), 712 So.2d 162. Laws will not be accorded retroactive effect where such retroactivity would operate unconstitutionally to disturb vested rights. Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724.
Considering the prior constitutional provision and its interpretation in Spooner, supra, in contrast with the 1989 amendment and the subsequent statutes, we find the later laws are substantive in nature. They significantly altered how Louisiana law views forfeitures of drug related property and disturbed vested rights in certain personal property. Consequently, we hold that the applicable law in the instant case is that in effect on the dates of the seizure of the cash, not subsequent legislation. See, Aucoin v. State through DOTD, supra; Vernon v. Wade Correctional Inst., 26,053 (La.App.2d Cir.8/19/94), 642 So.2d 684. Thus, in the instant case, the trial court did not err in applying La. R.S. 32:1550, et seq., as in effect at the time of Lamb's arrests and in the manner set forth in State v. Spooner, supra.[6]

STATE'S PROOF OF FORFEITURE
By his third assignment, Lamb contends that the state failed to prove beyond a reasonable doubt that the cash taken from him during his arrests is derivative contraband and thus, subject to forfeiture under former La. R.S. 32:1550, et seq.
Things which are subject to forfeiture because they are the immediate instruments of a crime, but which are not ordinarily illegal to possess, such as automobiles, guns and currency, are classed as derivative contraband. State v. Spooner, supra; State v. Manuel, 426 So.2d 140 (La.1983). The State, at the time of Lamb's arrests, bore the entire burden of proving that the property in question qualifies as derivative contraband. Spooner, supra.
Former La. R.S. 32:1550A provided that certain defined property, including cash, is contraband and "shall be subject to seizure and forfeiture." Relative to money, subsection A(3) allowed for forfeiture of cash upon proof it was "used, or intended for use, to facilitate the transportation, sale, receipt, possession, production, manufacture, compounding, dispensation, concealment, importing, or exporting of" controlled dangerous substances. Subsection A(7)(a) similarly allowed forfeiture of cash upon proof it was "furnished or intended to be furnished, or acquired in exchange for a controlled dangerous substance."[7] In addition *1275 to proof the property was contraband as defined by the statute and thus provided valid grounds existed for forfeiture, La. R.S. 32:1550 C provided that the state must also prove: (1) the seizure was in conformity with the constitution and the law or was made upon reasonable ground to believe that it so conformed; (2) the owner of the property was knowingly and intentionally a consenting party or privy to a violation of the controlled dangerous substances statute; and (3) the value of the contraband was in excess of five hundred dollars or the contraband was intended for commercial sale.[8]See, State v. Spooner, supra; State v. Manuel, supra.; State v. Cook, 460 So.2d 1075 (La.App. 2d Cir. 1984), writs denied, 466 So.2d 465, 466 (La.1985).
In the present case, the state asked the judge to take judicial notice of the fact that Lamb had pled guilty and been convicted of possession of cocaine with the intent to distribute relative to the two arrests during which the cash now at issue was seized. The state also requested the judge take judicial notice of the entire criminal proceedings in which Lamb pled, particularly pointing out a bond hearing where Lamb stated he made an "insignificant amount of money" legitimately. The remaining evidence consisted of testimony by the state's two witnesses and several relevant state documents. The defendant made no objections to the introduction of any of the evidence.
Sergeant Curt Petterson of the Monroe Police Department testified that he was involved in both arrests of Lamb. Relative to the May 2, 1989 arrest, the policeman indicated that he had received information from a reliable confidential informant that a black male and a black female had been selling cocaine out of the Days Inn. He and another officer proceeded to the room number they had been given and encountered Estella McIntyre about to enter the room. Upon being invited into the room by her, they encountered Lamb and introduced themselves. At that point, they noticed a medicine bottle containing several readily identifiable rocks of crack cocaine in plain view on the dresser. Upon receiving consent to further search the room, one of the officers raised up a roof panel in the bathroom area which caused cocaine, razor blades and money to fall out upon him. Additionally, a .44 caliber weapon was found in the room; an item identified as commonly associated with drug dealing.
Officer Petterson further indicated that the controlled dangerous substance found in the ceiling was in the form of a "cookie" or a large piece of raw crack cocaine, from which it was evident smaller "rocks" were being removed using the nearby razors. The policeman, an experienced narcotics officer, noted that the $6,371 in cash that fell out of the ceiling with the cocaine was in small bills. He indicated that such large bundles of cash in small denominations are typically associated with the sale of drugs. Additionally, he indicated that Lamb, who originally denied knowing about the drugs or selling them, approached him during the booking procedure and claimed the cocaine and money belonged to Victor Kelly, a known local drug dealer, and stated that he had been selling the drugs for Kelly.
Regarding the July arrest, Officer Petterson testified that it had been made pursuant to the execution of a search warrant. The valid search warrant, introduced at trial, was based on information from a reliable confidential informant that Lamb *1276 was again selling drugs from the Days Inn. Officer Petterson testified that upon executing the warrant at a different hotel room from the first arrest he again encountered Lamb. The search uncovered 187 grams of cocaine in a bag just outside the back door to the room, a .32 caliber handgun in a car rented to Lamb, and $271 in cash in small bills. The officer again noted that such bundles of cash are typically associated with drug sales. The bag with the cocaine contained receipts with Lamb's name showing he had recently purchased a watch and had it repaired. Also, the officer noted that he questioned Bruce Watson, who was present in the room. Watson stated that he came from Houston to Monroe with Lamb to sell drugs and that he had placed the bag at the back door to the room upon approach of the police. Watson confirmed the confidential informant's information that Lamb was selling the drugs out of the room.
Finally, Officer Petterson testified that he had submitted all the seized items he suspected to be cocaine to the North Delta Crime Lab. He then identified the documents showing the results and noted that the submitted items had been analyzed and determined to be cocaine. He concluded his testimony by opining based on his experience with approximately 100 search warrants that the seized cash was the proceeds of drug sales, noting the way it was "wadded up and rolled up and just stuffed up with the cocaine."
The only other witness to testify was Judy Brooks, the state probation officer who had prepared the PSI following Lamb's plea to the charges stemming from his 1989 arrests. She stated that she interviewed Lamb as part of her investigation and indicated that Lamb told her that he came to Monroe from Houston to sell drugs because Monroe had a more lucrative market. Lamb further told her that he was making about $7,000 per night in Monroe selling cocaine.
Based on this record evidence, we find that the state proved beyond a reasonable doubt that the cash seized from Lamb at the time of his arrests is derivative contraband and thus, subject to forfeiture.[9] The money was found in very close proximity to the large amount of cocaine seized from Lamb's possession on two occasions. Lamb admitted to the sale of the drugs in pleading guilty to two counts of possession of cocaine with intent to distribute, in at least one statement to the police, and in his PSI interview. Indeed, Lamb's accomplice confirmed during the second arrest that they had come from Houston to sell cocaine. Additionally, the amount, denominations, and extent of the packaging of the seized money were consistent with cash derived from drug sales. Simply put, Lamb's assignment lacks merit.

CONCLUSION
For the reasons assigned, the forfeiture judgment of the trial court is affirmed. Costs of appeal are assessed against Claude Lamb to the extent permissible by law.
AFFIRMED.
NOTES
[1] We note that this petition was filed under a new district court docket number and proceeded thereunder on remand.
[2] These forfeiture provisions were repealed in their entirety on July 15, 1997 by Acts 1997, No. 1334, § 2, effective August 15, 1997.
[3] The trial court originally issued a written ruling on November 17, 1997. Lamb appealed that "ruling" in June 1998. As no formal judgment had been signed, this court treated that filing as a writ application and ordered the trial court to immediately issue a formal written judgment which was finally handed down on July 22, 1998.
[4] In our prior opinion regarding the seized cash, State v. Lamb, 645 So.2d 791, we noted in a footnote that there was a serious question of whether the State received a copy of Lamb's motion requesting the return of the money even though it was filed in the record of those proceedings prior to the state's petition. Moreover, it was this apparent lapse in notification as well as several others attributable to both sides combined with other procedural irregularities that ultimately warranted a remand to the trial court.
[5] In our previous opinion, this court suggested that proceeding under the forfeiture statutes then in effect would be one of the proper procedures to follow to properly dispose of the cash at issue. See, State v. Lamb, 645 So.2d 791, fn. 6.
[6] In his prior appeal of this forfeiture matter, Lamb contended that La R.S. 40:2601, et seq., was applicable to his case because it specifically related to drug forfeitures. At that time, we questioned in a footnote retroactively applying the new forfeiture provisions to Lamb's case. State v. Lamb, 645 So.2d 791, 794. Moreover, a finding that the current drug forfeiture law, La. R.S. 40:2601, et seq., is applicable as suggested by plaintiff would place a significantly lessened burden upon the state. We cannot imagine that Lamb would have intended this result to follow from his appeal on this issue, particularly in light of his assignments regarding the merits of the state's case.
[7] Prior to Spooner, supra, subsection A(7) included a presumption that cash found in close proximity to a controlled dangerous substance was contraband rebuttable only upon proof by the claimant of clear and convincing evidence to the contrary. Spooner, supra, found such shifting of the burden away from the state and onto the claimant to be unconstitutional and excised it from the statute, thus placing the entire burden upon the state.
[8] Relative to this last element, the courts have interpreted the provision to relate not to the value or intended commercial sale of the derivative property the state is seeking to forfeit, but to the value or intended commercial sale of the contraband drugs or contraband to which the cash has some relationship. See, Spooner, supra; State v. Whiting, 493 So.2d 286 (La.App. 2d Cir.), writ denied, 496 So.2d 354 (La.1986).
[9] In Spooner, supra, the court was greatly divided regarding the issue of the standard of proof applicable in forfeiture cases, i.e. reasonable doubt, clear and convincing, or preponderance. However, based on its ruling that the state had proven its case relative to one seized item beyond a reasonable doubt and the decision to remand the case relative to another item of property, the court did not reach the issue. Spooner, supra at 339. Although we have never directly addressed the issue, this court has regularly applied the reasonable doubt standard in forfeiture cases arising prior to the 1989 forfeiture law changes. See, State v. Whiting, supra; State v. Cook, supra. The trial court in this matter used the clear and convincing standard. However, having concluded that the state proved its case beyond a reasonable doubt, we find it unnecessary to the resolution of this case to discuss the appropriate standard.