STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1357

OPTI-FLOW, LLC

VERSUS

PRODUCTION SERVICES INTERNATIONAL, LTD.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2002-2283
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE
**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Glenn B. Gremillion, Billy H. Ezell, and James T. Genovese, Judges.

**REVERSED AND REMANDED.**

Camille Bienvenu Poche
P. O. Drawer 3408
Lafayette, LA 70502-3408
(337) 262-9000
Counsel for Plaintiff/Appellee
      Opti-Flow, LLC

Michael D. Skinner
P. O. Box 3507
Lafayette, LA 70502
(337) 237-2660
Counsel for Defendant/Appellant
      Production Services International, Ltd.

**Michael D. Hebert**
**Milling, Benson, Woodward, L.L.P.**
**P. O. Box 51327**
**Lafayette, LA 70505-1327**
**(337) 232-3929**
**Counsel for Defendant/Appellant**
      **Production Services International, Ltd.**

**Joseph P. Hebert**
**Renee Z. Berard**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**Counsel for Intervenor/Appellee**
      **Western National Bank**

GREMILLION, Judge.

The defendant, Production Services International, Ltd. (PSI), appeals the judgment of the trial court granting summary judgment in favor of the plaintiff, Opti-Flow, LLC, and awarding it $161,863.42. For the following reasons, we reverse and remand for further proceedings.

## FACTS

On December 5, 2000, PSI acquired the assets and goodwill of Production Services, Inc. The company, which was involved in the oil industry, continued the employment of employees from Production Services, including Stuart Harlow, a shareholder/salesman for Production Services, and David Berryhill, who became PSI's shop manager. Prior to the sale of Production Services' assets, Harlow and Berryhill met with William Gray and C.T. Miller at Gray's home in Texas, in early November 2000. Gray, Production Services' president, became the president of the general partner of PSI. As a result of this meeting, Opti-Flow was formed to provide PSI with an agent for the sale of its products in Lafayette, Louisiana. Both Harlow and Berryhill, along with Miller, became owners/managers of Opti-Flow. Harlow and Berryhill continued their employment with PSI.

On December 1, 2000, PSI entered into a "Representative Agreement" with Opti-Flow, whereby Opti-Flow agreed to sell and service products manufactured by PSI in return for a commission. On May 1, 2002, Opti-Flow filed a suit on open account or, alternatively, for a breach of contract based on PSI's failure to remit the commissions owed it, in the amount of $135,354.44, as of March 15, 2002. Subsequent to Opti-Flow's motion for preliminary default, PSI filed declinatory and

1

peremptory exceptions and an answer. Thereafter, Opti-Flow filed a motion for summary judgment seeking the amount owed on open account and attorney's fees. PSI opposed this alleging the existence of the Representative Agreement between the parties. This matter was briefly stayed pending bankruptcy proceedings in federal court; however, it resumed following PSI's voluntary dismissal of that matter.

Upon the resumption of this proceeding, a petition of intervention was filed by Western National Bank seeking the recognition of its first priority lien in PSI's "accounts, inventory, chattel paper, documents, instruments, general intangibles, certificates of title, goods, and the proceeds thereof." Thereafter, the trial court denied Opti-Flow's motion for summary judgment finding that the relationship between the parties was contractual in nature. Opti-Flow then filed a second motion for summary judgment seeking the sum of $161,863.42 owed by PSI pursuant to the December 1, 2000 Representative Agreement. PSI opposed this motion on several grounds including the validity of the Representative Agreement.

Following a hearing, the trial court granted summary judgment in favor of Opti-Flow, finding that PSI had judicially confessed the existence and validity of the Representative Agreement. Thus, it held that Opti-Flow was relieved of the necessity of proving the validity of the contract and awarded it $161,863.42, plus legal interest. Judgment was rendered on February 2, 2004. Although this judgment was not certified as a final judgment, an order certifying it as a final judgment was rendered on January 12, 2005. This appeal by PSI followed.

2

## ISSUE

On appeal, PSI argues that the trial court erred in finding that it judicially confessed the existence and validity of the Representative Agreement and in granting summary judgment in favor of Opti-Flow.

## SUMMARY JUDGMENT

The standard of review pertaining to summary judgment is well established, as provided by La.Code Civ.P. art. 966. Thus, an appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate. *Magnon v. Collins*, 98-2822 (La. 7/7/99), 739 So.2d 191. This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C). Accordingly, we will undertake a de novo review of the matter.

## JUDICIAL CONFESSION

In its first assignment of error, PSI argues that the trial court erred in finding that it judicially confessed to the validity of the contract between it and Opti-Flow. In its second memorandum in support of its opposition to motion for summary judgment, PSI argued the existence of the December 1, 2000 Representative Agreement, noting that it did not provide for attorney's fees in the event of a breach by either party. In concluding, it stated, "The contract between PSI and Opti-Flow is just that, a contract." The trial court held that PSI's reliance on the existence of the Representative Agreement constituted a judicial confession and relieved Opti-Flow of the burden of proving the validity of the agreement.

3

Louisiana Civil Code Article 1853 provides that "[a] judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

> A judicial confession under La.Civ.Code art. 1853 constitutes incontrovertible evidence of a particular issue and serves to waive the necessity of any further proof on that issue. *Ramelow v. Bd. of Trustees of the University of Louisiana System*, 03-1131 (La.App. 3 Cir. 3/31/04), 870 So.2d 415, *writ denied*, 04-1042 (La.6/18/04), 888 So.2d 184; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La.12/3/03), 861 So.2d 156. In order for a party's statement to constitute a judicial confession, it must be an express acknowledgment of an adverse fact. *Jones v. Gillen*, 564 So.2d 1274 (La.App. 5 Cir.1990); *Sanders v. Earnest*, 34,656 (La.App. 2 Cir. 7/24/01), 793 So.2d 393; *State v. Lamb*, 31,919 (La.App. 2 Cir. 5/7/99), 732 So.2d 1270. Additionally, "the adverse party must have believed the fact was no longer at issue or must have relied on it, to his detriment." *Lamb*, 732 So.2d at 1272; *Alexis v. Metropolitan Life Insurance Co.*, 604 So.2d 581 (La.1992); *Jefferson Parish v. Fidelity & Deposit Co.*, 95-951 (La.App. 5 Cir. 4/30/96), 673 So.2d 1238; *Jones*, 564 So.2d 1274. . . .
>
> Finally, courts have taken into account a party's otherwise consistent opposition to the fact alleged to have been confessed. . . . Thus, the presence of consistent opposition to the allegedly confessed fact weighs against finding a confession.

*Leday v. Safeway Ins. Co.*, 04-610, pp. 5-6 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084, 1088-89.

After reviewing the evidence, we do not find that PSI judicially confessed to the validity of the Representative Agreement, as held by the trial court. In its answer and its memorandum in opposition to Opti-Flow's motion for summary judgment, while admitting to the existence of a contract between the parties, PSI still questioned the validity of that agreement. We do not find that its statement, "The contract between PSI and Opti-Flow is just that, a contract," is an express

4

acknowledgment of an adverse fact, which Opti-Flow believed was no longer at issue; nor do we find any evidence in the record that it relied on this statement to its detriment. Accordingly, the judgment of the trial court finding that PSI judicially confessed to the validity of the Representative Agreement is reversed.

**GENUINE ISSUE OF MATERIAL FACT**

In its second assignment of error, PSI argues that the trial court erred in finding that there were no genuine issues of material fact and in granting summary judgment in favor of Opti-Flow. After conducting a de novo review of the record, we find that a genuine issue of material fact exists; thus, the trial court improperly granted summary judgment in favor of Opti-Flow.

PSI, through the affidavit and deposition testimony of Harold Berg, argued that its consent to the Representative Contract was vitiated through error as a result of a conflict of interest arising from the relationship of several of its employees with Opti-Flow. Berg testified that Harlow and Berryhill met with Gray and Miller at Gray's home in Texas in early November 2000. As a result of that meeting, Opti-Flow was formed to provide PSI with an agent in Lafayette, Louisiana. The Representative Agreement was signed by Gray and Harlow in January 2001 and February 2001, respectively, effective December 1, 2000. Berg testified that he was not aware of Harlow, Berryhill, and Gray's involvement with or the reason for the formation of Opti-Flow.

Berg testified that he had several conversations with Gray about the contract and was assured by him that the Representative Agreement would be good for PSI. However, he testified that he felt Gray was untruthful; in fact, he felt that the

5

contract had worked to PSI's detriment. He explained that prior to the acquisition of Production Services by PSI, all sales and service originated out of Production Services' Spring, Texas office; thus, all income went to Production Service. Subsequent to the formation of Opti-Flow, any business in Louisiana was sold through the Spring office, but was run through Opti-Flow's office in Lafayette. Thus, all of the income from commissioned items sold was split between PSI and Opti-Flow, whereas all of the income from any noncommissioned items, such as service, cleaning, and testing, would go 100% to Opti-Flow.

In pointing out a further example of a conflict of interest, Berg explained that Opti-Flow's commission was based on a percentage of the cost of PSI's product sold by Opti-Flow, as set out in a schedule attached to the Representative Agreement. The schedule provided that "[a]t no time will P.S.I. LTD pay commissions that exceed 50% of profit." Although a product cost a certain amount of dollars, Harlow testified that a product's actual selling price was marked up as much as possible. Berg testified that both Harlow and Berryhill were in a position to deflate the actual cost of PSI's products sold by Opti-Flow in order to increase its commission on the actual selling price of the items. He further explained that Harlow was earning a commission on sales for PSI and a portion of a commission from Opti-Flow on any sales routed through it by him. Berg further disputed the amount of commissions claimed by Opti-Flow as it failed to include the cost bases of numerous items sold to its customers.

In *Hickman v. Bates*, 39,178, pp. 5-6 (La.App. 2 Cir. 12/15/04), 889 So.2d 1249, 1253, the court stated:

A contract is formed by the consent of the parties. La. C.C. art. 1927. However, consent may be vitiated by error, fraud, or duress. La. C.C. art. 1948. Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. *Shelton v. Standard/700 Associates*, 01-0587 (La.10/16/01), 798 So.2d 60. Fraud may also result from silence or inaction. La. C.C. art. 1953. Error induced by fraud need not concern the cause of the obligation to vitiate consent, but it must concern a circumstance that has substantially influenced that consent. La. C.C. art. 1955. Fraud does not vitiate consent when the party against whom the fraud was directed could have ascertained the truth without difficulty, inconvenience, or special skill. However, this exception does not apply when a relation of confidence has reasonably induced a party to rely on the other's assertions or representations. La. C.C. art. 1954. Fraud need only be proven by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957.

In reviewing the record and the pertinent law related to vitiation of consent, we find that PSI has revealed that there are genuine issues of material fact with regard to whether its consent to the Representative Agreement was vitiated by error induced by fraud. Berg testified that Gray convinced him that contracting with Opti-Flow would help its business, but stated that he was never informed by anyone that PSI's own employees were owners/managers of Opti-Flow. He further alleges that this involvement resulted in a conflict of interest and argues that the contract has led to a loss of income for PSI. Had the true facts been known by him, he stated that PSI would not have entered into the contract with Opti-Flow. Accordingly, the judgment of the trial court granting summary judgment is reversed and the matter is remanded for further proceedings. The costs of this matter are assessed to plaintiff-appellee, Opti-Flow, LLC.

**REVERSED AND REMANDED.**

7