STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-0436


JAMES A. GLENN O/B/O CODY M. GLENN

VERSUS

GRANT PARISH SCHOOL BOARD, ET AL.


************

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 19364
HONORABLE WARREN D. WILLETT, DISTRICT JUDGE

************

JIMMIE C. PETERS
JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese, Judges.


AFFIRMED.


Howard N. Nugent, Jr.
Attorney at Law
Post Office Box 1309
Alexandria, LA 71301-1309
COUNSEL FOR PLAINTIFF/APPELLANT:
    James A. Glenn o/b/o Cody M. Glenn

**Jon K. Guice**
**Linda K. Ewbank**
**Hammonds & Sills**
**1881 Hudson Circle**
**Monroe, LA 71201**
**(318) 324-0101**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Grant Parish School Board**

PETERS, J.

The plaintiff in this matter, James A. Glenn, appeals the trial court's grant of summary judgment in favor of the Grant Parish School Board dismissing it from this litigation. For the following reasons, we affirm the trial court judgment.

This litigation arises from an April 17, 2007 physical altercation on the Grant High School campus involving two minors who were students at the school—Shaquille Galberth and Mr. Glenn's fifteen-year-old son, Cody M. Glenn. The altercation resulted in significant injuries to Cody, and Mr. Glenn brought this suit against the Grant Parish School Board (School Board) and others[1] to recover the damages his son sustained.[2] After numerous other procedural filings, the School Board filed the motion for summary judgment that is the subject of this appeal. Following a September 15, 2009 hearing, the trial court granted the School Board's request for relief and dismissed it as a party defendant. This appeal followed that judgment, and, in his single assignment of error, Mr. Glenn asserts that "[t]he trial court erred in failing to find that the School Board was liable, because it had actual notice of the harassment and did not document the wrongdoing or pass on the complaint to higher authority."

Appellate review of a summary judgment is *de novo*, applying the same standard as the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730. Accordingly, we will review this matter *de novo*.

As a general principle, Louisiana law favors the summary judgment procedure as a vehicle by which the "just, speedy, and inexpensive" determination of an action

---

[1]Of the other defendants named in Mr. Glenn's original suit, only Loletha Galberth, Shaquille's mother, remains as a party defendant.

[2]Mr. Glenn brought this suit only on behalf of his minor son and asserted no claim for damages he may have individually sustained.

may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). In a summary judgment proceeding, the burden of persuasion remains always with the mover to show that no material issues of fact exist. La.Code Civ.P. art. 966(C)(2). That is to say, the mover must present supportive evidence that the motion for summary judgment should be granted. *Hayes v. Autin*, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, *writ denied*, 97-281 (La. 3/14/97), 690 So.2d 41.

> A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.

*Smith*, 639 So.2d at 751 (citations omitted).

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's, Inc.*, 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La. 3/23/01), 788 So.2d 427.

This suit is based on negligence and questions of liability for negligent acts are evaluated using a duty-risk analysis. *Daye v. Gen. Motors Corp.*, 97-1653 (La. 9/9/98), 720 So.2d 654. Under this analysis, the "[p]laintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." *Id*.

2

at 659. The plaintiff's failure to prove any of the elements of the duty-risk analysis must result in a determination of no liability. *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06), 923 So.2d 627. Cause-in-fact is a factual question to be determined by the fact finder. *Benjamin ex rel. Benjamin v. Hous. Auth. of New Orleans*, 04-1058 (La. 12/1/04), 893 So.2d 1. If a plaintiff is successful in establishing the cause-in-fact element, he or she must next establish the existence and nature of the duty owed by the defendant to the plaintiff. In the case of a school board, the duty owed a student is that of "reasonable supervision." *Wallmuth v. Rapides Parish Sch. Bd.*, 01-1779, 01-1780, p. 8 (La. 4/3/02), 813 So.2d 341, 346.

The reasonable supervision duty is analyzed by application of one of two Civil Code articles: La.Civ.Code art. 2315, which provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it," and/or La.Civ.Code art. 2320, which provides that "[t]eachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence" although only when the teacher "might have prevented the act which caused the damage," yet did not do so. Although it reversed the ultimate decision reached by this court, our supreme court, in *Wallmuth*, 813 So.2d 341, adopted this court's enunciation of the standard of liability for school boards under either La.Civ.Code art. 2315 or La.Civ.Code art. 2320 as being correct. This court had stated:

> A school board, through its agents and teachers, owes a duty of reasonable supervision over students. La. Civ.Code art. 2320; *Adams v. Caddo Parish School Bd.*, 25,370 (La.App. 2 Cir. 1/19/94), 631 So.2d 70, *writ denied*, 94,684 (La.4/29/94), 637 So.2d 466. The supervision required is reasonable, competent supervision appropriate to the age of the children and the attendant circumstances. *Jackson v. Colvin*, 98-182 (La.App. 3 Cir. 12/23/98), 732 So.2d 530, writ denied, 99-228 (La. 3/19/99), 740 So.2d 117. This duty does not make the school board the

3

insurer of the safety of the children. *Id.* Constant supervision of all students is not possible nor required for educators to discharge their duty to provide adequate supervision. *Adams*, 631 So.2d 70

> Before liability can be imposed upon a school board for failure to adequately supervise the safety of students, there must be proof of negligence in providing supervision and also proof of a causal connection between the lack of supervision and the accident. *Id.* "Injury from horseplay between discerning students which, at some stage may pose an unreasonable risk of harm to the participants, does not automatically and of itself render the supervising authority liable." *Henix v. George*, 465 So.2d 906, 910 (La.App. 2 Cir.1985). Furthermore, before a school board can be found to have breached the duty to adequately supervise the safety of students, the risk of unreasonable injury must be foreseeable, constructively or actually known, and preventable if a requisite degree of supervision had been exercised. *Id.*

*Wallmuth v. Rapides Parish Sch. Bd.*, 01-42, pp. 4-5 (La.App. 3 Cir. 5/16/01), 802 So.2d 28, 31-32, *rev'd*, *Wallmuth*, 813 So.2d 341.

The factual basis upon which the trial court determined that the School Board's motion for summary judgment had merit was supplied by Cody's September 4, 2009 affidavit[3] and his January 22, 2009 deposition testimony; by Swaka Coleman's September 4, 2009 affidavit; by the January 22, 2009 deposition testimony of Sharon M. Shelton, a teacher at Grant High School; and by an April 24, 2009 affidavit of Randy Crawford, the Grant High School principal. In evaluating the matter now before us, we first note that, although the altercation giving rise to this litigation was between Cody and Shaquille, it had its roots in previous problems that had arisen between Shaquille and Swaka Coleman, who was another Grant High School student and Cody's sixteen-year-old cousin.

The affidavits and deposition testimony establish that, during the week leading up to the altercation, Shaquille had teased Swaka unmercifully about facial hair on

---

[3]The text of the affidavit suggests that it was signed on September 4, 2007. However, it was sworn to and subscribed to by the notary on September 4, 2009.

her upper lip. According to Swaka's affidavit, her complaints to her teachers went unaddressed, and Shaquille's humiliating actions only got worse. When it became apparent that the school officials were not going to protect Swaka, Cody entered the picture.[4]

Cody's affidavit and deposition testimony establish without dispute that shortly after lunch on April 17, 2007, he approached Shaquille as the students were milling around the outside common area of the campus. When confronted by Cody, Shaquille admitted his efforts to publicly humiliate Swaka and immediately began to threaten Cody physically. Cody did not engage Shaquille, but retreated—initially to a brick wall some fifteen to twenty feet away from Shaquille and then to stand behind one of the teachers on duty in the common area. However, when the school bell rang for the students to return to class, Shaquille struck Cody, and the altercation began in earnest.

A number of the other students in the area joined sides, and the situation quickly became less of a fight and more of a riot. Once the melee was brought under control by the school personnel, Cody first went to the bathroom to tend to his bleeding nose and then was taken to the emergency room of an Alexandria, Louisiana hospital.

Affidavits and deposition testimony supporting the motion for summary judgment establish that, at the time of the April 17, 2007 altercation, at least four teachers were assigned to, and present at, specific locations in the common areas of the campus, with two teachers "roving" around the common areas in support of the

_____

[4]According to Swaka, she asked Cody to intervene on her behalf and confront Shaquille. Cody's affidavit acknowledges her direct request, but in his deposition he testified that he was approached, not by Swaka, but by two of his friends who told him of Shaquille's harassment of Swaka.

stationary teachers.[5]  Additionally, nothing in the evidence before the trial court suggests that Shaquille had any disciplinary history or that any teacher or administrator had any knowledge of the possibility that Cody might act as Swaka's protector with regard to Shaquille.[6]

In its motion for summary judgment, the School Board argued both that the risk of injury was not foreseeable and that there was no evidence of negligent supervision on the part of the School Board.  Mr. Glenn argued that Cody's injury was foreseeable because the School Board, through its teachers, had actual knowledge of Shaquille's ongoing harassment of Swaka.  Mr. Glenn also argued that the School Board's failure to take any actions to stop or mitigate Shaquille's harassment of Swaka was a cause-in-fact of Cody's injuries.

In its oral reasons for judgment, the trial court stated that it had reviewed the record and concluded:

> I understand that [Cody] was acting in defense of his cousin, however, the injuries that are at issue here are the injuries that he sustained as a result of the altercation with [Shaquille].  And the school board's handling of any harassment or teasing of [Swaka], while that may have precipitated the incident, I think we have to look at the school board's responsibilities toward [Cody], with respect to:  Were they negligent in their handling of that situation?  And I think that situation being something that transpired on a Tuesday, not what happened on Friday or the days leading up to that date.  I find it interesting that in [Cody's] deposition he indicated that he was not expecting a fight with [Shaquille].  That was not what he was expecting to transpire when he confronted him about the teasing.  Did [Cody], who was the one that initiated the contact, or the conversation with [Shaquille] - - if he were not expecting the fight, how could the school expect such an incident to occur?  While I understand your underlying ideas of that the school has responsibility [sic] to ensure that it is a safe and non-hostile environment that's conducive to learning, I don't find any evidence of any disputed

---

[5]Other evidence suggests that the stationary teachers could have numbered as many as seven, with three additional "rovers."

[6]In fact, Cody testified specifically that he did not speak to any administrator or teacher concerning Shaquille's harassment of Swaka or his intent to confront Shaquille.

fact as to whether or not, as to [Cody], that the school met its responsibility of trying to provide a safe environment for him. They had no - - there was nothing to indicate to them that this altercation was going to occur. And given the depositions that were filed, indicating that the fight was broken up within 30 to 40 seconds; given the number of students who became involved in the altercation, I believe that their actions were reasonable under the circumstances and, therefore, I am going to grant the defendant's Motion for Summary Judgment.

Thus, without stating as much, the trial court followed the guidance provided by the supreme court in *Wallmuth*, 813 So.2d 341, concluding that, regardless of the knowledge the school personnel may have had concerning the problems between Shaquille and Swaka, there exists no evidence to suggest that the School Board could have foreseen even the possibility of an encounter between Shaquille and Cody over Swaka's complaints. That is to say, while the School Board was not able to ensure Cody's safety, no evidence exists to suggest that it failed in its duty of reasonable supervision.

We find no error in the trial court's judgment. Therefore, we find no merit in the single assignment of error asserted by Mr. Glenn.

### *Motion to Strike*

The School Board filed a motion with this court, asking us to strike the copy of Swaka's affidavit attached to Mr. Glenn's brief on appeal. In its motion, the

School Board asserted that the attached copy contained pages not found in the affidavit filed at the trial court level in opposition to its motion for summary judgment. Our decision to affirm the trial court's grant of summary judgment renders this motion moot.

## DISPOSITION

For the foregoing reasons, we affirm the trial court judgment granting summary judgment in favor of the Grant Parish School Board dismissing it as a party defendant in this litigation. We assess all costs of this appeal to James A. Glenn.

**AFFIRMED.**