GAIDRY, J.
 

 |2In this suit on open account, a nursing home appeals a trial court judgment dismissing its petition based upon a finding that the defendant’s signature on an admission agreement did not obligate him to pay the costs of his stepfather’s care. We affirm.
 

 FACTS AND PROCEDURAL HISTORY
 

 Guest House of Slidell, L.L.C. (“Guest House”) filed a petition on open account on December 4, 2009 against Sam Hills, individually and on behalf of Leroy Gilley, seeking to recover $9,159.95
 
 [1]
 
 for services rendered on behalf of Mr. Hills’s stepfather, Mr. Gilley. Guest House alleged that the open account was created by an Admission Agreement signed by Mr. Hills on September 5, 2008, which obligated Mr. Hills to pay basic daily room charges for Mr. Gilley. Mr. Hills denied any obligation for the charges incurred by Mr. Gilley.
 

 
 *499
 
 After a bench trial, the court rendered judgment in favor of Mr. Hills. The pivotal issue, in the court’s opinion, was whether Mr. Hills, by signing the Admission Agreement in the space designated for the “Responsible Party,” individually and on behalf of the resident in his capacity as “Authorized Agent and/or health care surrogate,” obligated himself to pay the costs of care provided to Mr. Gilley, even though Mr. Gilley was listed as the responsible party on the first page of the Admission Agreement. Considering the evidence, the court found that the contract was clear that Mr. Gilley was the responsible party and that Mr. Hills’s signature as a responsible party was only given in his capacity as “Authorized Agent and/or health care surrogate.” Furthermore, in regard to Guest House’s claims against Mr. Hills on behalf of Mr. Gilley, the court noted that no evidence |swas presented to prove that Mr. Hills was Mr. Gilley’s succession representative so as to make him the proper party defendant under La. C.C.P. art. 734. Therefore, the court concluded that Mr. Hills had no legal obligation under the contract and rendered judgment in favor of Mr. Hills, dismissing Guest House’s claims against him with prejudice.
 

 Guest House has appealed this judgment, arguing that the trial court’s interpretation of the contract was erroneous.
 

 DISCUSSION
 

 We are obligated to give legal effect to contracts according to the true intent of the parties.
 
 See
 
 La. C.C. art. 2045. The true intent of the parties to a contract is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences.
 
 See
 
 La. C.C. art. 2046. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.
 
 Id.
 
 In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence.
 
 See
 
 La. C.C. art. 1848. Contracts, subject to interpretation from the instrument’s four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. A doubtful provision must be determined in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties. |4La. C.C. art. 2058. Interpretation of ambiguous terms in a contract requires construction against the contract’s drafter. La. C.C. art. 2056.
 

 Thus, our first inquiry is whether, looking within the four corners of the Admission Agreement, the contract is ambiguous. Whether a contract is ambiguous or not is a question of law and subject to the
 
 de novo
 
 standard of review on appeal. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed absent manifest error.
 
 Amitech U.S.A., Ltd. v. Nottingham Const. Co.,
 
 09-2048, pp. 18-19 (La.App. 1 Cir. 10/29/10), 57 So.3d 1043, 1058,
 
 writs denied,
 
 11-0866, 11-0953 (La.6/17/11), 63 So.3d 1036, 1043. A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the
 
 *500
 
 parties’ intent cannot be ascertained from the language used.
 
 Campbell v. Melton,
 
 01-2578, p. 6 (La.5/14/02), 817 So.2d 69, 75.
 

 The heading on the first page of the Admission Agreement provides that it is an agreement “By and Between” the following parties:
 

 Provider: ComCare of LA
 

 Facility (d/b/a): Guest House of Slidell
 

 Resident: Leroy Gilley
 

 Responsible Party: Leroy Gilley
 

 Relationship/Representative Capacity:Self
 

 The final page of the Admission Agreement contains lines for the signatures of the authorized facility representative, the resident, the responsible party, additional co-responsible parties, and witnesses. There is an “X” and a mark (presumably made by Mr. Gilley) on the line for the resident’s signature. Under the signature line for the responsible party is the following language:
 

 |sSignature of Responsible Party in His/ Her Individual Capacity and on behalf of the Resident in the following capacity (Circle one or more:
 

 (1) Authorized Agent and/or health care surrogate;
 

 (2) Curator;
 

 (3) Power of Attorney)
 

 Mr. Hills signed on the line for the responsible party, and under his signature, “(1) Authorized Agent and/or health care surrogate” was circled. There were no co-responsible parties listed.
 

 Although the trial court found the contract to be clear and unambiguous, in our
 
 de novo
 
 review, viewing the agreement as a whole, we find that the intent of the contract as to the identity of the responsible party and the capacity in which Sam Hills signed was unclear. Mr. Hills is not listed as a party to the agreement on the first page; however, Mr. Hills signed the contract as the responsible party both in his individual capacity
 
 and
 
 on behalf of the resident. Guest House alleges that Mr. Hills was the intended responsible party, and Mr. Gilley’s name was only listed on the first page because the form was pre-printed before Guest House was aware that Mr. Hills would be the responsible party. However, no explanation was given as to why the forms were not reprinted when it was discovered that Mr. Hills would be the responsible party. Mr. Hills alleges that the intent was never for him to be the responsible party, and he only signed the contract on Mr. Gilley’s behalf, despite the fact that the language below his signature states that he is signing individually and on behalf of the resident. Because the trial court erroneously concluded that the contract was clear and unambiguous, it was restricted to looking within the four corners of the agreement and could not consider any extrinsic evidence in interpreting the contract. Having concluded as we did that the contract’s terms are |r,ambiguous, we must now conduct a
 
 de novo
 
 review
 
 [2]
 
 of the facts, looking to the surrounding circumstances to determine the parties’ intent.
 

 Mr. Hills testified at trial that Mr. Gilley was his step-father, and his mother had been deceased for several years, but he had allowed Mr. Gilley to continue living in his house after her death because he felt it was the right thing to do. Mr. Hills had a power of attorney which gave him the authority to draft, endorse, and accept checks for Mr. Gilley. Mr. Gilley was initially admitted to the hospital after Mr. Hills found him face down on the floor of
 
 *501
 
 his bedroom after not seeing him for several days. Mr. Hills testified that he was asked in the emergency room to sign Mr. Gilley in, but he declined to do so because he said he was not responsible for Mr. Gilley. When Mr. Gilley was able to be discharged from the hospital, he was delirious and unable to care for himself, and Mr. Hills was unable to care for him, so Mr. Gilley was transferred from the hospital to Guest House. Mr. Hills testified that the hospital transported Mr. Gilley to Guest House and that he received a call from Guest House requesting that he sign in Mr. Gilley. Mr. Hills did not go sign Mr. Gilley in at Guest House right away, but after repeated calls from Guest House and being told that if someone did not come to sign Mr. Gilley in, he would be evicted, he went to Guest House. He testified that he told Sue McIntyre, the Guest House employee who presented him with the Admission Agreement, that he was not responsible for Mr. Gilley and could not take on any financial responsibility for him, and he was told that the signing was just a formality required for Mr. Gilley to be admitted. Mr. Hills refused to sign the Medicare Part A and Part B Rate Structure forms | presented to him because he was told that he would incur financial responsibility for the portion not paid by Medicare by signing. However, since he believed the Admission Agreement made Mr. Gilley the responsible party, he signed on behalf of Mr. Gilley over “Authorized Agent and/or health care surrogate,” which was circled for him. When private payments were required to be made to Guest House during Mr. Gilley’s stay, Mr. Hills filled out the checks drawn on Mr. Gilley’s account and Mr. Gilley signed them.
 

 Nancy Ann Baker, Guest House’s accounts manager, testified that it was normally her job to handle admission agreements, but she was not there at the time Mr. Hills signed the agreement because it was after business hours. Although she signed the agreement as a witness, she was not there when Mr. Hills signed the agreement and did not go over the agreement with him. She did speak to Mr. Hills within the first two or three weeks of Mr. Gilley’s stay regarding payment for services once Medicare stopped paying for services for Mr. Gilley. She explained to Mr. Hills that once Mr. Gilley was discharged from skilled nursing care, Medicare would stop paying, and Mr. Gilley would have to either apply for Medicaid or become a private pay patient. She asked Mr. Hills whether he could afford private pay, and he responded that he could not, so she told him he would have to complete a Medicaid application for Mr. Gilley. Mr. Hills did not want to fill out the Medicaid application for Mr. Gilley, but after Mr. Gilley was unable to supply the information and told Ms. Baker to talk to Mr. Hills, Mr. Hills eventually supplied Guest House with the requested information regarding Mr. Gilley’s finances.
 

 Gwen Sue McIntyre, who works for Guest House in medical records, testified that she completed the admissions packet with Mr. Hills because |sNancy Baker was out at the time. She prepared the admissions packet, including the Admission Agreement, prior to meeting Mr. Gilley or Mr. Hills. Mr. Hills had no input as to the content of the agreement. She testified that Mr. Hills had to sign the Admission Agreement for Mr. Gilley because Mr. Gil-ley was unable to sign for himself. She read the Admission Agreement aloud to Mr. Hills, and he asked no questions before signing the agreement. She testified that Mr. Hills circled “Authorized Agent and/or health care surrogate” under his signature.
 

 Guest House argues on appeal that the latest expression of the parties evidences their true intent, and since Mr. Gilley’s
 
 *502
 
 name was pre-printed on the Admission Agreement as the responsible party prior to his admission, but Mr. Hills’s signature on the line for the responsible party on the signature page was added at the time of admission, the court should recognize the latter as evidencing the parties’ true intent. We disagree. At the time Mr. Hills signed the agreement, the capacity in which he was signing, “Authorized Agent and/or health care surrogate,” was also selected. Thus, the parties’ “latest expression” was ambiguous and not dispositive of the issue of whether Mr. Hills was signing only in his capacity as Mr. Gilley’s agent or in both his individual and representative capacity.
 

 Considering the entirety of the circumstances surrounding the signing of the Admission Agreement, and viewing the ambiguous language in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and other contracts of a like nature between the same parties, we find that the parties to the contract intended for Mr. Gilley, not Mr. Hills, to be the responsible party. Guest House’s arguments on appeal are without merit.
 

 laDECREE
 

 For the reasons set forth above, the judgment of the trial court dismissing Guest House’s claims against Sam Hills is affirmed. Costs of this appeal are assessed to Guest House.
 

 AFFIRMED.
 

 [1]
 

 . The petition also sought interest, attorney’s fees, and costs.
 

 [2]
 

 . When an error of law skews the trial court’s finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts
 
 de novo. Evans v. Lungrin,
 
 97-0541, 97-0577, p. 6 (La.2/6/98), 708 So.2d 731, 735.