NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 12-10

THEODORE S. CARMICHAEL, ET AL.

VERSUS

THE BASS PARTNERSHIP AND BOPCO, L.P., ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 84,484
HONORABLE JOHN D. TRAHAN, DISTRICT JUDGE

**********

JIMMIE C. PETERS
JUDGE

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, and J. David Painter, Judges.

AFFIRMED IN PART; REVERSED AND
RENDERED IN PART; AND REMANDED.

Nancy Scott Degan
Roy Clifton Cheatwood
Adam Bennett Zuckerman
Baker, Donelson, Bearman
201 St. Charles Ave., #3600
New Orleans, LA 70170
(504) 566-5200
COUNSEL FOR DEFENDANT/APPELLEE:
    Samson Resources Co.

**Guy Earl Wall**
**Paul Edward Bullington**
**Jonathan R. Cook**
**Wall, Bullington & Cook, LLC**
**540 Elmwood Park Blvd**
**New Orleans, LA 70123**
**(504) 736-0347**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **BOPCO, L.P.**
    **The Bass Partnership**

**Gerald Francis Slattery, Jr.**
**David Stephen Landry**
**Colleen Carr Jarrott**
**Schully, Roberts, Slattery**
**1100 Poydras St., Ste 1800**
**New Orleans, LA 70163**
**(504) 585-7800**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Continental Land & Fur Company**

**David Lyman Browne**
**Attorney at Law**
**650 Poydras St., Suite 2150**
**New Orleans, LA 70130**
**(504) 648-0171**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Torch Energy Services, Inc.**

**PETERS, J.**

The Bass Partnership and BOPCO, L.P. (collectively referred to as Bass) appeal the trial court's grant of a partial summary judgment in favor of Continental Land & Fur Company, Inc. (Continental), finding that Bass was contractually obligated to defend and indemnify Continental in this suit wherein the original plaintiffs, Theodore S. Carmichael and Judy Chiasson Carmichael, sought location restoration of immovable property used for oil and gas exploration and production. Additionally, Bass appeals the trial court judgment denying its motion for summary judgment on the issue of indemnity. For the following reasons, we affirm in part; reverse and render in part; and remand for further proceedings.

## OPINION

This litigation actually has as its origins a suit for personal and property damages filed by the Carmichaels against numerous defendants, including Bass and Continental. The Carmichaels are the owners of immovable property located in Acadia Parish, Louisiana, upon which is situated an oil and gas well identified as the Hebert No. 1 Well. In 2003, the Carmichaels acquired the immovable property, which had been the subject of numerous mineral leases, commencing in 1984. In their suit, they sought damages from the various defendants pursuant to various causes of action, arising from the contamination and pollution of the surface and subsurface of their property during the many years of oil and gas exploration and production carried out pursuant to the enumerated mineral leases.

In partial response to the Carmichaels' petition, Continental filed a cross claim against Bass, asserting that Bass was obligated to indemnify Continental for litigation expenses and any judgment that might be rendered against it. The indemnification, according to Continental in its cross claim, arose from the terms of a January 18, 2000 letter which had been incorporated into the February 1, 2000 Assignment and Bill of

Sale transferring Continental's interest in the Hebert No. 1 Well to Bass. Bass responded to Continental's cross claim by filing its own cross claim against Continental asserting its own claim for indemnification pursuant to the terms of the January 18, 2000 letter. In its cross claim, Bass asserted that it had plugged and abandoned the Hebert No. 1 Well and had remediated and removed all oilfield equipment from the site; that it was entitled to defense and indemnity pursuant to the January 18, 2000 letter and the February 1, 2000 Assignment and Bill of Sale; and that Continental was also liable to it for any damages arising from Continental's ownership interests in the Hebert No. 1 Well prior to 7:00 a.m. on February 1, 2000, the effective date of its transfer to Bass.

Continental then filed a motion for partial summary judgment on the defense and indemnity issue, and Bass reciprocated with a motion for summary judgment of its own addressing its indemnity claims. After a hearing on the summary judgment motions,[1] the trial court granted Continental's motion for partial summary judgment finding that Bass was "obligated to defend and indemnify [Continental] in cross claim for the claims in this lawsuit" pursuant to the terms of the letter agreement. In granting relief to Continental, the trial court also denied Bass's motion for summary judgment.

On March 9, 2011, the Carmichaels and Continental filed a motion seeking court approval of a compromise and settlement between the parties. The settlement was eventually approved. On August 22, 2011, based upon a stipulation between Bass and Continental, the trial court entered judgment in favor of Continental and

---

[1] Other defendants had raised similar indemnity issues during the litigation, and the arguments on these issues were held the same day. However, the decisions on those issues are not before us, and we will limit our review to the dispute between Bass and Continental.

against Bass in the amount of $173,250.00. This amount represented the stipulated amount of attorney fees incurred by Continental in defense of the Carmichaels' suit.

Bass appealed this judgment, raising five assignments of errors:

A. The District Court Misinterpreted the Assignment in Granting Continental's Motion for Partial Summary Judgment and in Denying Bass' Motion for Summary Judgment.

B. The District Court Erred in Limiting Continental's Indemnity Obligation to Title Problems.

C. The District Court Erred in Failing to Distinguish Between Location Restoration and Damages.

D. The District Court Erred in Ruling that Liability Could Only be Imposed by "Operation" of the Property.

E. Alternatively, the District Court Erred in Granting a Summary Judgment Because the Assignment was Ambiguous and the District Court Decided Disputed Issues of Material Fact.

**OPINION**

The law pertaining to summary judgment is well settled:

Appellate review of a summary judgment is de novo, applying the same standard as the trial court. *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512 (La.7/5/94), 639 So.2d 730. Accordingly, we will review this matter de novo.

As a general principle, Louisiana law favors the summary judgment procedure as a vehicle by which the "just, speedy, and inexpensive" determination of an action may be achieved. La.Code Civ.P. art. 966(A)(2). The trial court is required to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B). In a summary judgment proceeding, the burden of persuasion remains always with the mover to show that no material issues of fact exist. La.Code Civ.P. art. 966(C)(2). That is to say, the mover must present supportive evidence that the motion for summary judgment should be granted. *Hayes v. Autin*, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, *writ denied*, 97-281 (La.3/14/97), 690 So.2d 41.

A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are

3

material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits.

*Smith*, 639 So.2d at 751 (citations omitted).

In determining whether a fact is material, we must consider the substantive law governing the litigation. *Davenport v. Albertson's*, Inc., 00-685 (La.App. 3 Cir. 12/6/00), 774 So.2d 340, *writ denied*, 01-73 (La.3/23/01), 788 So.2d 427.

*Glenn ex rel. Glenn v. Grant Parish Sch. Bd.*, 10-436, pp. 1-2 (La.App. 3 Cir. 11/3/10), 49 So.3d 1049, 1050 (alteration in original).

The apparent complexity of this litigation lies in the numerous parties involved and the associated cross claims emanating therefrom. However, the issue now before us is simply one of contract interpretation, and the rules pertaining to contract interpretation were set out by the supreme court in *Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279 (alteration in original):

"[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07-0054, p. 10 (La.5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims*, 07-0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans*, 35 La. Ann. 273 (1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93-0911, p. 5 (La.1/14/94), 630 So.2d 759, 763. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *See Maloney v. Oak Builders, Inc.*, 256 La. 85, 98, 235 So.2d 386, 390 (1970); *McConnell*, 35 La. Ann. at 275. Most importantly, a contract "must be interpreted in a common-

4

sense fashion, according to the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982).

"A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used." *Guest House of Slidell v. Hills*, 10-1949, p. 4 (La.App. 1 Cir. 8/17/11), 76 So.3d 497, 499-500.

The January 18, 2000 letter agreement between Bass and Continental provided in pertinent part:

> This is to verify our conversation of this date whereby Bass Enterprises Production Co. (hereinafter referred to as "Bass") and Continental Land & Fur Co., Inc. (hereinafter referred to as "Continental") have agreed that Continental will forfeit its interest in the Hebert No. 1 Well and associated leasehold interest, as well as further leasehold interests obtained by Bass and Davis Petroleum Corp., in the above prospect, according to the following terms and conditions:
>
> 1. For Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, Continental agrees to convey to Bass all of its right, title and interests in and to the Hebert No. 1 Well, the MT 3 RF SUA and the other properties described in numerical paragraph five (5) below and/or in Exhibit "A" hereto (hereinafter the "Properties"). **As to the Properties, Bass hereby agrees to assume Continental's share of plugging liability and Continental's share of the responsibility for location restoration. As the term is used in this agreement, location restoration shall include but not be limited to removal and disposal of any and all materials or substances including naturally occurring radioactive material ("NORM") used in or produced in connection with operations relating to the Properties.**
>
> 2. The Effective Date of transfer will be 7:00 a.m. local time on February 1, 2000.
>
> . . . .

5

5.  The transfer will include 100% of Continental's right, title and interests in the assets described on Exhibit "A", all associated leasehold, overriding royalty interests and acreage, whether such interest or acreage are located inside or outside of the MT 3 RF SUA, the well, flowlines, downhole equipment, saltwater disposal well(s) and facilities, gas gathering and compression facilities and all other personal property and rights-of-way affecting the leases and all oil and gas produced after 7:00 a.m. on the Effective Date.  In addition, the transfer will include 100% of Continental's right, title and interest in and to contractual and/or reversionary interests within the area described on Exhibit "A-1".

    . . . .

7.  **Within fifteen (15) days after the execution hereof, Continental will pay Bass $15,232.00 (11.413868% of $133,454) and will deliver to Bass a mutually acceptable assignment and bill of sale of the Properties.  Payment of this sum shall relieve Continental of any further payment obligations relating to costs and expenses incurred with regard to remediation on the Properties.**

8.  **Bass shall assume all responsibility for the Properties as of the Effective Date, and agrees and covenants to protect, defend, release, indemnify and save Continental harmless from and against any and all costs (including court costs and attorney fees), claims, demands, judgments, causes of action and other liability of whatsoever kind arising out of or incident to the ownership, operation, plugging, abandoning and location restoration of the Properties from and after the Effective Date.**  In addition, Bass shall protect, defend, release, indemnify and save Continental harmless from and against any an [sic] all  costs (including court costs and attorney fees), claims, demands, judgments, causes of action and other liability of whatsoever kind relating to the demands for releases of leases referred to in paragraph four (4) above and to any additional demands pertaining to the Properties and directed to the parties hereto.

9.  Except as to the demands for releases of leases referred to in paragraph four (4) above, **Continental agrees and covenants to protect, defend, release,**

> **indemnify and save Bass harmless from and against any and all costs (including court costs and attorney fees), claims, demands, judgments cause of action and other liability of whatsoever kind arising out of or incident to the ownership of Continental of the Properties prior to the Effective Date.**

(Emphasis added).

In its written reasons for judgment, the trial court stated:

> The defendants in cross-claim argue that when considered in context of the entire agreement, the only logical interpretation of this paragraph, is that their indemnity obligation is only for claims arising out of their ownership or title to the interest they conveyed. They point out that Bass' indemnity obligations specifically apply to "location restoration" as well as to claims "arising out of or incident to the ownership, operation, plugging, abandoning" of the property, whereas defendants' in cross-claim indemnity obligations are only for claims arising out of or incident to *the ownership* prior to the effective date. Had the parties intended that the defendants in cross-claim be responsible for location restoration or obligations arising out of operation of the property, they could have included that language in the contract.

> The Court finds that under the Letter Agreements, Bass is obligated to defend and indemnify the defendants in cross-claim for the claims of this lawsuit.

> Accordingly, the Motions of Continental, Plains, Torch and Cullen are granted, and the Bass Motions for Summary Judgment are denied.

(Emphasis in the original.)

After reviewing the above stated terms, we agree with the trial court that there is no ambiguity in terms of the contract pertaining to the reciprocal obligations of defense and indemnity. However, our interpretation leads us to find that Bass was entitled to defense and indemnity from Continental for any liability incurred by Bass arising from Continental's ownership of the mineral lease, including those relating to the remediation of the property prior to February 1, 2000.

Paragraph 1 of the letter clearly states that Bass is assuming any liability Continental has for plugging the Hebert No. 1 Well and its share of responsibility in

7

restoring the location, including but not limited to the removal and disposal of materials and substances used in the production of oil and gas. Paragraph 7 provides for the payment by Continental to Bass of its share of the $133,454.00 remediation costs, $15,232.00, based on its 11.413868% interest in the property. The terms state that the payment of this amount will relieve Continental of "any further payment obligations relating to costs and expense incurred with regard to remediation on the Properties."

The next two paragraphs, 8 and 9, contain the reciprocal defense and indemnification obligations. In assuming all responsibilities for the subject properties, Bass agrees to:

> [P]rotect, defend, release, indemnify and save Continental harmless from and against any and all costs (including court costs and attorney fees), claims, demands, judgments, causes of action and other liability of whatsoever kind arising out of or incident to the ownership, operation, plugging, abandoning and location restoration of the Properties from and after the Effective Date.

Likewise, Continental agrees to:

> [P]rotect, defend, release, indemnify and save Bass harmless from and against any and all costs (including court costs and attorney fees), claims, demands, judgments cause of action and other liability of whatsoever kind arising out of or incident to the ownership of Continental of the Properties prior to the Effective Date.

The only difference between the two paragraphs is the fact that Continental's obligation does not include the language "operation, plugging, abandoning and location restoration." However, we do not find that the absence of this language leads to a finding that Continental's obligation arises only "out of their ownership or title to the interest they conveyed," as is espoused at the trial court level.

Pursuant to the terms of the letter, Continental transferred all of its interest in the Hebert No. 1 Well as of 7:00 a.m., February 1, 2000. Subsequent to that time and date, it no longer had an interest in the operation of the well, and Bass agreed, for a

sum, to assume its percentage of liability for plugging and abandoning the well and in restoring the property. Thus, reading the terms of Paragraphs 8 and 9 in light of Paragraph 1, it is clear that Continental still agreed to defend and indemnify Bass for any "liability of whatsoever kind arising out of or incident to the ownership of Continental of the Properties prior to the Effective Date." The suit by the Carmichaels seeking damages pertaining to the restoration of their property, if any, arose prior to February 1, 2000, fits within the description of liability arising out of or incident to Continental's ownership of the mineral lease affecting the property upon which the Hebert No. 1 Well was situated.

Based on this finding, we affirm the trial court judgment in favor of Continental. However, we reverse the trial court judgment denying Bass's motion for summary judgment and render judgment in its favor finding that it was owed defense and indemnification from Continental for any cause of action arising out of its ownership of the subject mineral lease prior to February 1, 2000. We remand the matter to the trial court for a determination on these issues.

## DISPOSITION

The judgment of the trial court denying summary judgment in favor of Bass Partnership and BOPCO, L.P. is reversed, and judgment is rendered in favor of Bass Partnership and BOPCO, L.P., finding that they are owed defense and indemnification from Continental Land & Fur Company, Inc. for any damages to the subject property arising prior to February 1, 2000. The trial court judgment finding that Continental Land & Fur Company, Inc. is owed defense and indemnity by Bass Partnership and BOPCO, L.P. for any damages to the subject property arising subsequent to February 1, 2000 is affirmed. The matter is remanded to the trial court for further proceedings

9

on the issue of the amounts owed pursuant to both parties' obligations.  Costs of this appeal are assessed equally between the parties.

**AFFIRMED IN PART; REVERSED AND RENDERED IN PART; AND REMANDED.**

10