# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 06-714

RONALD J. CARTER

VERSUS

D P & L TIMBER

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION,
DISTRICT 2,
PARISH OF RAPIDES,  NO. 03-01368
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

JAMES T. GENOVESE
JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, J. David Painter, and James T. Genovese, Judges.

THIBODEAUX, CHIEF JUDGE, DISSENTS IN PART AND ASSIGNS WRITTEN REASONS.

**AFFIRMED IN PART; AND REVERSED IN PART.**

George Flournoy
Flourney & Doggett (APLC)
P. O. Box 1270
Alexandria, Louisiana 71309-1270
(318) 487-9858
COUNSEL FOR PLAINTIFF/APPELLANT:
    Ronald J. Carter

**Shannon Seiler Dartez**
**Hurlburt, Privat & Monrose**
**700 St. John St., Ste. 200**
**P. O. Drawer 4407**
**Lafayette, Louisiana 70502-4407**
**(337) 237-0261**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **D P & L Timber**

**GENOVESE, JUDGE.**

In this workers' compensation case, the Workers' Compensation Judge (WCJ) ruled that: (1) Claimant's surgical recommendation was reasonable and necessary; (2) Claimant was totally and permanently disabled; and (3) the language in a previously filed joint petition to settle back-due benefits constituted a judicial confession of Claimant's average weekly wage. The judgment also cast each party with its own costs. Claimant appeals. For the following reasons, we affirm in part, and reverse in part.

## FACTS

Claimant, Ronald J. Carter (Carter), was injured in a work-related accident on November 12, 2000. In 2000, Carter filed a Disputed Claim for Compensation Form (1008) with the Office of Workers' Compensation (OWC) when disputes arose between Carter and his employer, D P & L Timber (DPL), regarding his entitlement to and the amount of workers' compensation benefits. In 2002, the parties filed a joint petition and compromise settlement for all claims for back-due indemnity benefits between November 12, 2000, and February 11, 2002, which settlement agreement was approved by the OWC.

An issue later arose regarding Carter's medical treatment and condition which resulted in his filing a second 1008 in 2003. Carter contended that he was entitled to undergo a lumbar surgery, which had been recommended to him by Dr. Clark Gunderson, and also sought penalties and attorney fees. In its answer, DPL asserted that Carter was totally and permanently disabled, which status entitled it to claim a social security offset against the amount of workers' compensation benefits due.

The matter was set for trial on June 14, 2005. On the morning of trial, the parties reached a compromise agreement on the issues of penalties and attorney fees.

1

Additionally, Carter raised the issue of the amount of his average weekly wage. Counsel for DPL objected to the introduction of evidence regarding Carter's wages based upon the 2002 joint petition and compromise settlement. The WCJ took judicial notice of the previous filings and sustained the objection. Carter was allowed to proffer testimony on that issue.

On September 9, 2005, the WCJ issued oral reasons for judgment wherein he found that Carter proved by a preponderance of the evidence that he suffered a back condition, that the back condition was related to his work-related accident of November 2000, and that the lumbar surgery recommended by Dr. Gunderson was reasonable and necessary treatment. The WCJ also found that Carter was permanently and totally disabled, and awarded DPL an offset for social security benefits received pursuant to La.R.S. 23:1225(A). A judgment was signed on November 14, 2005, casting each party with their own costs of court. Carter filed a motion for new trial on the assessment of court costs which was denied. Carter then lodged this appeal.

## ISSUES

The following issues are presented by Carter for our review:

1. Whether the WCJ erred in holding that the joint petition to settle back-due benefits constituted a judicial confession? Alternatively, if the language constituted a judicial confession, should it be revoked on the basis of error of fact?

2. Whether the WCJ abused his discretion in ordering Carter to bear his own costs?

## LAW AND ARGUMENT

### JUDICIAL CONFESSION

In the instant case, we are called upon to decide whether the WCJ was legally correct in holding that Carter's average weekly wage, as expressed in the settlement documents filed with and approved by the OWC in 2002, constituted a judicial confession by Carter of his average weekly wage. This determination requires us to

2

consider whether the law was correctly applied to the facts of this case.

> An appellate court may not set aside a trial court's finding of fact absent manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). However, when the trial court makes an error of law, the manifest error standard no longer applies. The Supreme Court of Louisiana has established that in the event of legal error:

> > the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.

*Succession of Moss*, 00-62, pp. 3-4 (La.App. 3 Cir. 6/21/00), 769 So.2d 614, 617, *writ denied*, 00-2834 (La. 12/8/00) 776 So.2d 462 (citing *Evans v. Lungrin*, 97-541, pp. 6-7, (La. 2/6/98), 708 So.2d 731, 735 (citations omitted)).

Louisiana Civil Code Article 1853 defines a judicial confession as "a declaration made by a party in a judicial proceeding." Louisiana Civil Code Article 1853 further provides that a judicial confession "constitutes full proof against the party who made it" and that it "is indivisible and it may be revoked only on the ground of error of fact." Once a judicial confession is made by a party, it "has the effect of waiving evidence as to the subject of the admission- -of withdrawing the subject matter of the confession from issue." *Cichirillo v. Avondale Indus. Inc.*, 04-2894, p. 6 (La. 11/29/05), 917 So.2d 424, 429 (citing *Cheatham v. City of New Orleans*, 378 So.2d 369 (La.1979); *Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc.*, 00-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, *writ denied*, 01-152 (La. 3/16/01), 787 So.2d 316). However, a judicial confession by a party does not preclude that party from denying the correctness of the admission, unless the party claiming the benefit from the admission has relied on the admission to his prejudice. *Crawford v. Deshotels*, 359 So.2d 118 (La.1978).

As this court explained in *Leday v. Safeway Ins. Co. of La.*, 04-610, pp. 5-6 (La.App. 3 Cir. 11/17/04), 888 So.2d 1084, 1088:

> A judicial confession under La.Civ.Code art. 1853 constitutes incontrovertible evidence of a particular issue and serves to waive the necessity of any further proof on that issue. *Ramelow v. Bd. of Trustees of the [Univ.] of Louisiana System*, 03-1131 (La.App. 3 Cir. 3/31/04), 870 So.2d 415, *writ denied*, 04-1042 (La.6/18/04), 888 So.2d 184; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La.12/3/03), 861 So.2d 156. In order for a party's statement to constitute a judicial confession, it must be an express acknowledgment of an adverse fact. *Jones v. Gillen*, 564 So.2d 1274 (La.App. 5 Cir.1990); *Sanders v. Earnest*, 34,656 (La.App. 2 Cir. 7/24/01), 793 So.2d 393; *State v. Lamb*, 31,919 (La.App. 2 Cir. 5/7/99), 732 So.2d 1270. Additionally, "the adverse party must have believed the fact was no longer at issue or must have relied on it, to his detriment." *Lamb*, 732 So.2d at 1272; *Alexis v. [Metro.] Life [Ins.] Co.*, 604 So.2d 581 (La.1992); *Jefferson Parish v. [Fid.] & Deposit Co.*, 95-951 (La.App. 5 Cir. 4/30/96), 673 So.2d 1238; *Jones*, 564 So.2d 1274.

As explained above, this is not the first litigation arising from Carter's work-related accident of 2000. When the first 1008 was filed with the OWC in 2000, the calculation of Carter's average weekly wage and indemnification rate was at issue, as was his disability status and medical treatment. In the 1008, Carter alleged that his average weekly wage was $710.00. In August of 2002, the parties filed a joint petition to compromise those claims with the OWC. The settlement documents expressly stated that Carter agreed to dismiss his claims for all back-due workers' compensation benefits, including but not limited to, any claim for indemnity benefits, mileage, penalties and attorney fees.[1] Notably, the amount of Carter's average weekly wage is expressly noted therein as $503.73. We find that the provisions of these documents constitute "a declaration made by a party in a judicial proceeding" and, therefore, a judicial confession in accordance with La.Civ.Code art. 1853.

---

[1]We agree with the WCJ's determination that Carter's claim for back-due benefits necessarily encompassed a determination of his average weekly wage. See La.R.S. 22:1221.

4

We further conclude that DPL considered this fact to no longer be at issue. First, following the settlement between the parties in 2002, and thereafter, DPL paid Carter workers' compensation benefits based on an average weekly wage of $508.73. Additionally, the second 1008 filed on February 1, 2003 did not raise the issue of the calculation of Carter's average weekly wage. Rather, the disputes identified on the 1008 included Carter's entitlement to surgery and penalties and attorney fees. The reliance by DPL on this judicial confession continued until the date of the trial, when Carter raised the issue of his average weekly wage. The WCJ noted at the commencement of trial that Carter had not amended his 1008 to include the calculation of the average weekly wage as an issue, and he had not filed a pre-trial statement apprising the court and counsel that this was an issue to be addressed at trial. The record reveals that at trial, and after the parties put a partial settlement on the record, counsel for Carter then stated that he intended to introduce evidence regarding Carter's wages. It is evident from reading the trial transcript that this was the first notice to DPL that the average weekly wage was disputed.

For the foregoing reasons, we find no legal error in the WCJ's ruling that Carter's average weekly wage of $508.73 was judicially admitted by him in the joint petition for settlement which was field with the OWC in 2002, and that DPL considered that fact to no longer be at issue. As such, Carter's judicial admission of his average weekly wage had the effect of withdrawing the subject matter from issue.

**ERROR OF FACT**

Carter argues, in the alternative, that if the prior settlement documents constituted a judicial admission of his average weekly wage, it should be revoked on the basis of error of fact pursuant to La.Civ.Code art. 1853. We disagree.

Carter's average weekly wage was an issue in dispute in the prior litigation. It was the subject of discovery, was calculated and agreed upon by the parties, and the

5

matter ultimately culminated in a settlement. There is no evidence in the record of a factual error by Carter in this case. He did not set forth in the second 1008 any claim of mistake of fact or mistake in calculation involving his average weekly wage, nor did he amend his pleading to assert same. We find this contention to be without merit.

**COURT COSTS**

In his second assignment of error, Carter contests the assessment of court costs wherein the WCJ ordered that "each party bear their own costs." For the following reasons, we find an abuse of discretion in the assessment of court costs and reassess costs as set forth below.[2]

Louisiana Code of Civil Procedure Article 1920 provides, in pertinent part, that "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." "The trial court may assess costs against any party in the proportion it deems equitable, even against the party prevailing on the merits." *Greene v. Greene*, 94-79, p. 4. (La.App. 3 Cir. 10/5/94), 643 So.2d 891, 894 (citing *D.B. Orban Co. v. Lakco Pipe*, 496 So.2d 1382 (La.App. 3 Cir. 1986)).

In the case at bar, neither party prevailed on every issue. DPL was successful in establishing that Carter was totally and permanently disabled, and thereby entitled to claim a social security offset against the amount of workers' compensation benefits it owed Carter. Likewise, the issue of Carter's average weekly wage, and his judicial admission thereof, was resolved in favor of DPL. On the other hand, Carter prevailed on the issue of his entitlement to the recommended surgery. In light of the issues presented, and the judgment rendered, we reassess trial court costs by assessing the costs of taking the depositions of Drs. Gunderson, Ware, and Picou against the

---

[2]A trial court's assessment of court costs will not be disturbed on review in the absence of an abuse of discretion. *Ford v. State, through Dep't of Pub. Safety*, 00-1546 (La.App. 3 Cir. 6/5/02), 819 So.2d 1156.

6

Defendant, with all other related trial costs of court to be equally assessed against all parties.

## **<u>DECREE</u>**

For the foregoing reasons, the judgment of the trial court is affirmed in part, and reversed in part.

Costs of this appeal are assessed equally against all parties.

**AFFIRMED IN PART; AND REVERSED IN PART.**

RONALD J. CARTER

VERSUS

DP & L TIMBER


THIBODEAUX, Chief Judge, dissenting in part.

The previous settlement which included the computation of average weekly wage does not constitute a judicial confession.

The *second* Form 1008 in 2003 was a separate lawsuit which focused on issues separate from and independent of the 2000 claim for back-due indemnity benefits. The 2000 claims were comprised by a settlement in 2002. The settlement encompassed the plaintiff's claim for "all back due workers' compensation benefits." The compromise settlement specifically stated that the "[e]mployee's rights to any claims for workers' compensation benefits arising *after* February 11, 2002, shall be *reserved* by Employee. (Emphasis supplied). This settlement in 2002 settled all previously disputed issues regarding *back due* benefits. It had nothing to do with the issue of permanent and total disability and entitlement to lumbar surgery.

A workers' compensation claimant initiates a proceeding by filing a claim "on a form to be provided by the director." La.R.S. 23:13130(A). The claim shall set forth the benefits in dispute. La.R.S. 23:1310(B). The term "claim" appears throughout the Workers' Compensation Act but that term is not defined. However, "it is clear from the context of provisions using the term [in the Workers' Compensation Act] that the underlying claim for relief is what is meant, not the

enforcement of a judgment. A claim is initiated by the filing of a petition with the OWC once an issue surfaces which the parties cannot themselves resolve." *Fontenot v. Reddell Vidrine Water Dist.*, 02-439, 02-442, 02-478 (La. 1/14/03), 836 So.2d 14. The parties could not resolve the issues of permanent and total disability and the necessity for lumbar surgery. Thus, a new claim, i.e., a new lawsuit, was initiated pursuant to La.R.S. 23:1310.

A judicial confession is "a declaration made by a party in *a* judicial proceeding." La.Civ.Code art. 1853. That judicial confession was made in *a* judicial proceeding which governed the issues of back due indemnity benefits. It does not apply in *all* legal proceedings. It had nothing to do with the present disputes which the parties could not themselves resolve. That is why an additional claim was filed in 2003.

Further, the claimant makes a point in relying on *Picard v. Vermilion Parish School Board*, 00-1222 (La.App. 3 Cir. 44/01), 783 So.2d 590. There, we said that "[t]he judicial confession is binding on the court and must be applied as the law of the case in which it is made. . . . Thus, an earlier judicial confession does not bind a party in a subsequent proceeding unless the 'other party claiming benefit of judicial estoppel resulting therefrom has been deceived by such judicial confession and has relied or acted thereon to his prejudice.'" The previous judicial confession regarding the average weekly wage was made in another proceeding with wholly different issues. No one was deceived by the past stipulation of average weekly wage in this *present* proceeding which was initiated by a *separate* Form 1008. In my view, this is an entirely new proceeding and the reference to the average weekly wage in a settlement for *back-due* indemnity benefits is not binding.

For the foregoing reasons, I dissent in part.

2