# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-1134


**THEODORE S. CARMICHAEL, ET UX.**

**VERSUS**

**THE BASS PARTNERSHIP, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 84,484
HONORABLE JOHN DAMIAN TRAHAN, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, John E. Conery, and David Kent Savoie, Judges.


**AFFIRMED.**

**Guy E. Wall**
**Paul E. Bullington**
**Jonathan R. Cook**
**Wall, Bullington & Cook, LLC**
**540 Elmwood Park Boulevard**
**Harahan, Louisiana 70123**
**(504) 736-0347**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
    **BOPCO, LP**
    **The Bass Partnership**

**Lamont Paul Domingue**
**Elizabeth L. Guglielmo**
**Voorhies & Labbe**
**Post Office Box 3527**
**Lafayette, Louisiana 70502-3527**
**(337) 232-9700**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Harry H. Cullen, et al.**
    **Continental Land & Fur Company, Inc.**

**CONERY, Judge.**

Theodore and Judy Carmichael (Carmichaels) settled their law suit for well site restoration and cleanup against several oil and gas exploration and production companies. The only claims remaining are the third party demands and cross claims for reciprocal defense and indemnity costs between co-defendants, The Bass Partnership and BOPCO, LP (Bass) on one side and Continental Land & Fur Co. Inc. (Continental) and Harry H. Cullen, individually, Harry H. Cullen d/b/a HHC Exploration, Inc., and Harry H. Cullen d/b/a HHC 1976 Exploration Limited Partnership (Cullen) on the other side.

This case has been before this court on two prior occasions for different panels to rule on summary judgments relating to the indemnity provisions of the contracts at issue.[1] Both panels eventually agreed to deny the summary judgments and remand the matter for trial on the merits. After a full trial on the merits on remand, the district court ruled in favor of Continental and Cullen against Bass dismissing their third party demands against Cullen and Continental and ordering Bass to pay Continental $173,250.00 plus interest for their costs and attorney fees to defend the Carmichaels' main demand. Bass timely appealed. For the following reasons, we affirm.

## ASSIGNMENT OF ERRORS

Bass assigns the following errors on appeal:

> A. The District Court Erred in Dismissing Bass' Claims for Defense and Indemnity Against Continental and Cullen.

---

[1] *Carmichael v. Bass Partnership*, 11-845 (La.App. 3 Cir. 2/1/12), 95 So.3d 1069; *Carmichael v. Bass Partnership*, 12-10 (La.App. 3 Cir. 5/12/12) (unpublished opinion), *vacated on rehearing*, 12-10 (La.App 3 Cir. 7/13/12), *rehearing opinion recalled and remanded*, 12-10 (La.App. 3 Cir. 8/15/12).

B. The District Court Erred in Rendering Judgment in Favor of Continental and Against Bass.

C. Alternatively, the District Court Erred in Refusing to Consider Bass' Evidence Regarding Continental's Attorney Fee Claim.

## PROCEDURAL HISTORY AND TRIAL COURT RULING

The trial court in this case wrote extensive written reasons which correctly summarize the facts and legal issues in this case, and we will quote extensively from its opinion throughout.

In 2006, Theodore and Judy Carmichael filed suit against The Bass Partnership and BOPCO (collectively referred to as Bass), Continental Land & Fur Company (Continental) and several other defendants alleging that their property had been damaged by the exploration and production activities associated with the Hebert No. 1 Well and the Hebert No. 1 Saltwater Disposal (SWD) Well in the Leleux Field, Acadia Parish. In December of 2009, the Carmichaels settled with Bass and most of the other defendants. The settlement agreement specifically excluded Continental, Samson Resources and Harry H. Cullen, Individually, Harry H. Cullen d/b/a HHC Exploration, Inc., and Harry H. Cullen d/b/a HHC 1976 Exploration Limited Partnership (Cullen). Cullen, who was not sued by the plaintiffs, was brought into the suit by Bass' third-party demand for defense and indemnity. Continental and Samson later settled with the Carmichaels. The only claims in the lawsuit remaining are reciprocal demands for defense and indemnity between Bass, Continental and Cullen.

The claims for indemnity are based on Letter Agreements dated January 18, 2000, that were part of the assignments of Continental's and Cullen's mineral interest to Bass. The provisions in the two contracts pertaining to indemnity are virtually identical except for the names and the amount Continental and Cullen paid to Bass. Those provisions are as follows:

1. For Ten Dollars ($10.00) and other good and valuable consideration, the receipt of which is hereby acknowledged, [Continental/Cullen] agrees to convey to Bass all of its right, title and interests in and to the Hebert No. 1 Well, the MT 3 RF SUA and the other properties described in numerical paragraph five (5) below and/or in Exhibit "A" hereto (hereinafter the "Properties"). As to the Properties, Bass hereby agrees to assume [Continental's/Cullen's] share of plugging liability and

2

[Continental's/Cullen's] share of the responsibility for location restoration. As the term is used in this agreement, location restoration shall include but not be limited to removal and disposal of any and all materials or substances including naturally occurring radioactive material ("NORM") used in or produced in connection with operations relating to the Properties.

2. The Effective Date of transfer will be 7:00 a.m. local time on February 1, 2000.

. . . .

4. [Continental/Cullen] shall deliver the Properties free of any liens, mortgages, burdens or any other encumbrances other than those associated with demands for release of leases dated August 16, 1999, and September 15, 1999, addressed to [Continental/Cullen] Bass and the other working interest owners of the Properties[.]

. . . .

7. Within fifteen (15) days after the execution hereof, [Cullen will pay to Bass $22,171.00 / Continental will pay to Bass $15,232.00 (11.413868% of $133,454)] and will deliver to Bass a mutually acceptable assignment and bill of sale of the Properties. Payment of this sum shall relieve [Continental/Cullen] of any further payment obligations relating to costs and expenses incurred with regard to remediation on the Properties.

8. Bass shall assume all responsibility for the Properties as of the Effective Date, and agrees and covenants to protect, defend, release, indemnify and save [Continental /Cullen] harmless from and against any and all costs (including court costs and attorney fees), claims, demands, judgments, causes of action and other liability of whatsoever kind arising out of or incident to the ownership, operation, plugging, abandoning and location restoration of the Properties from and after the Effective Date. In addition, Bass shall protect, defend, release, indemnify and save [Continental/Cullen] harmless from and against any an [sic] all costs (including court costs and attorneys fees), claims demands, judgements [sic], causes of action and other liability of whatsoever kind relating to the demands for release of leases referred to in paragraph four (4) above and to any additional such demands pertaining to the Properties and directed to the parties hereto.

9. Except as to the demands for release of leases referred to in paragraph four (4) above, [Cullen or Continental] agrees and covenants to protect, defend, release, indemnify and save Bass harmless from and against any and all costs (including court costs and attorney fees), claims demands, judgments, cause of action and liability of whatsoever kind arising out of or incident to the ownership of Cullen of the Properties prior to the Effective date.

Continental and Cullen contend that Bass should pay their defense expenses because Bass agreed to defend and indemnify them for liability arising out of plugging, abandoning and location restoration of the Carmichaels' property after they had assigned their interest to Bass. Bass claims that under Paragraph 9, Continental and Cullen owe their share of its defense cost and their share of the settlement because the liability for damages arose during the time Continental and Cullen owned the mineral lease. Continental and Cullen argue that under Paragraph 9, their obligation to indemnify Bass is limited to liability arising out of "ownership" or "title" which does not include liability arising out of operations.

These issues were previously before this Court on motions for summary judgment. In two separate judgments, the Court held that under the Letter Agreement, Continental and Cullen were not obligated to Bass for defense and indemnity of the claims in the lawsuit because their obligations were limited to those arising out of "ownership" which the Court interpreted to mean "title." The Court held that Bass was obligated to indemnify and defend Continental. Since the Carmichaels did not sue Cullen, the only claim against Cullen was Bass' third-party demand for enforcement of the indemnity agreement. The Court held that Bass was not obligated to indemnify Cullen for the cost of enforcing the indemnity agreement.

Bass appealed the two judgments which appeals were assigned to two different panels of the Third Circuit Court of Appeal. Both panels reversed and remanded the judgments but on different grounds. The panel in the Cullen appeal found that the Letter Agreement was ambiguous and that summary judgment dismissing Cullen from the suit was inappropriate. Since Cullen was still a party to the suit, the court found it unnecessary to grant the writ on the issue of Bass' duty to defend Cullen. *Carmichael v. Bass Partnership and BOPCO. Inc*, 95 So.3d 1069 (La. App. 3 Cir. 2/1/12). Thus, the holding that Bass is not obligated to pay Cullen's attorneys fees for its cost of enforcing the indemnity agreement was not overruled and remains the ruling of this Court.

4

The panel in the Continental appeal found that the Letter Agreement was not ambiguous. Under its interpretation of the Letter Agreement, Continental and Cullen owed Bass defense and indemnity for damages to the property arising prior to February 1, 2000, and Bass owed Continental defense and indemnity for damages arising subsequent to February 1, 2000. The matter was remanded for further proceedings to determine when the damage occurred. *Carmichael v. Bass Partnership and BOPCO. Inc*, 2012 WL 1525083 (La. App. 3 Cir. 5/2/2012)[2] Considering the different rulings on the motions for summary judgment, the Court finds that the Letter Agreements are ambiguous in that they are susceptible of more than one reasonable interpretation. Thus, it is necessary to consider extrinsic evidence to determine the intent of the parties. La. C.C. art. 2046, *Dixie Campers, Inc. v. Vesely Co.*, 398 So.2d 1087 (La.1981).

(Footnotes omitted.)

## CONTRACT INTERPRETATION

We agree that this case comes down to the interpretation of the provisions of the Letter Agreement of January 18, 2000, between Bass and Continental. In *Prejean v. Guillory*, 10-740, pp. 6-7 (La. 7/2/10), 38 So.3d 274, 279, the supreme court summarized the rules pertaining to contract interpretation and provided:

> "[W]hen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.,* 07–0054, p. 10 (La. 5/22/07), 956 So.2d 583, 590. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ.Code art. 2045. The reasonable intention of the parties to a contract is to be sought by examining the words of the contract itself, and not assumed. *Sims,* 07–0054 at p. 7, 956 So.2d at 589; *McConnell v. City of New Orleans,* 35 La. Ann. 273 (1883). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ.Code art. 2046. Common intent is determined, therefore, in accordance with the

---

[2] In a footnote, the trial court stated:

On July 13, 2012, the *Continental* panel granted a rehearing and reversed its May 2, 1999 opinion. It held that the contract was ambiguous. *Carmichael v. Bass Partnership and BOPCO, Inc*., 2012 WL 2866259 (La. App. 3 Cir. 7/13/2012). Then on August 15, 2012, the court recalled the July 13, 2012, opinion, which granted the rehearing application and reversed the opinion of May 2, 2012. *Carmichael v. Bass Partnership and BOPCO. Inc*., 2012 WL 3731406 (La. App. 3 Cir. 8/15/2012).

general, ordinary, plain and popular meaning of the words used in the contract. *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.,* 93–0911, p. 5 (La. 1/14/94), 630 So.2d 759, 763. Accordingly, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit, as it is not the duty of the courts to bend the meaning of the words of a contract into harmony with a supposed reasonable intention of the parties. *See Maloney v. Oak Builders, Inc.,* 256 La. 85, 98, 235 So.2d 386, 390 (1970); *McConnell,* 35 La. Ann. at 275. Most importantly, a contract "must be interpreted in a common-sense fashion, according to the words of the contract their common and usual significance." *Lambert v. Maryland Cas. Co.,* 418 So.2d 553, 559 (La.1982).

"A contract is considered ambiguous on the issue of intent when it lacks a provision bearing on the issue, its written terms are susceptible to more than one interpretation, there is uncertainty as to its provisions, or the parties' intent cannot be ascertained from the language used." *Guest House of Slidell v. Hills,* 10–1949, p. 4 (La.App. 1 Cir. 8/17/11), 76 So.3d 497,499-500.

After full trial on the merits, the trial court found that the provisions of the January 18, 2000 Letter Agreement were ambiguous and were subject to more than one interpretation. "Whether a contract is ambiguous is a question of law. Appellate review of a question of law simply requires the appellate court to determine whether the trial court's conclusion was correct." *CLK Co. L.L.C. v. CXY Energy, Inc.,* 07-834, p. 8 (La.App. 3 Cir. 12/19/07), 972 So.2d 1280, 1287, *writ denied,* 08-207 (La. 3/14/08), 977 So.2d 937 (citations omitted).

### *Bass' Assignments of Errors One and Two*

The assignments of error one and two urged by Bass will be addressed together as they both discuss the trial court's ruling dismissing their claims against Continental and Cullen and granting Continental's claim for attorney fees for the defense of the main demand.

The trial court analyzed the extensive evidence presented at trial, and after thoroughly discussing the evidence pertaining to the Letter Agreements and Indemnity Provisions at issue, the trial court concluded:

6

Continental and Cullen argue that under the Letter Agreement they are only required to defend and indemnify Bass from claims arising out of their title to the property. The Letter Agreement provides that they are to defend and indemnify Bass for "liability of whatsoever kind arising out of or incident to the ownership of [Continental/Cullen] of the Properties prior to the Effective date." The Court originally agreed with their interpretation that "ownership" in Paragraph 9 to mean "title". This was done in an attempt to avoid an interpretation that would make Bass responsible for the cost of remediating the contamination that occurred prior to February 1, 2000, in Paragraph 1, and Continental and Cullen responsible for that same obligation in Paragraph 9. Testimony at trial, however, indicated that liability "arising out of or incident to ownership" generally would be interpreted in the industry to mean any liability that a working interest owner would have either under the lease or the joint operating agreement because of its status as an owner of the lease. Frank McCreight testified that such provisions are standard in oil and gas transactions and are used to allocate liability by making the seller liable for anything before the transfer and the buyer liable for anything after the transfer.

The first Letter Agreement that Nuevo and Bass signed dated August 27, 1999, had a provision that allocated liability before the transfer date to the assignor and after that date to the assignee.[3] Once the parties became aware of the extensive environmental damage, the other lessees refused to assign their interests in the lease to Bass under those terms. Continental and Cullen agreed to transfer their interest and pay the price set by Bass, only if they would be relieved of any obligation relating to removing the NORM and salt contamination and restoring the property.

Considering the evidence pertaining to the evolution of the language of the Letter Agreements, the Court is convinced that the parties intended to carve out an exception to Continental's and Cullen's liability for obligations arising prior to February 1, 2000. The parties clearly intended that Bass would assume all of Continental's and Cullen's obligations and liabilities that they had as lessees that related to restoration or remediation of the property which they knew had been contaminated with NORM and high chlorides. They were all aware that the lease pursuant to which the wells were drilled provided that "[t]he Lessee shall be responsible for all damages caused by Lessee's operations."

---

[3] In a footnote, the trial court stated:

A fact which lends some support to the interpretation of 'ownership' as 'title' is that the paragraph was added by Bass in the final Nuevo draft when it added that Nuevo would warrant the title 'by, through and under' Nuevo. The parties discussed the warranty issue but never discussed the addition of Paragraph 9.

Bass produced evidence that most of the contamination of the property was caused by activities and operation that occurred prior to February 1, 2000. That damage to the property, however, was the same damage that Continental and Cullen paid Bass to remediate. At trial, there was no proof of any damage to the Carmichaels that occurred prior to the assignments other than the contamination of the property with NORM and chlorides.

Bass was not an unsophisticated purchaser. It had been a non-operating working interest owner of one-third of the lease since 1985. It had access to all of the Office of Conservation's records, the Compliance Orders and the various inspection reports along with four different estimates of the cost to remove the NORM and chlorides. The fact that Gary Dobbs immediately called Wayne Bailey to see if Bass intended to defend Continental in the lawsuit, is further evidence that Continental's and Cullen's intentions in signing the Letter Agreement was that upon paying the amount to Bass, Bass assumed all responsibility for damage to the property and would indemnify and defend Continental against such claims as those in the lawsuit. At the time they executed the Letter Agreements, the assignors did not contemplate that Bass would wait for years before cleaning up the site and expose them to a lawsuit by persons who did not purchase the property until three years after the assignment.

Bass insists that it only assumed the responsibility to restore the property to regulatory standards and not to original condition. There is nothing in the Letter Agreement limiting the remediation to regulatory standards. Bass has argued that "location restoration" as used in the industry means restoration to regulatory standards. These parties, however, negotiated to expand the definition of "location restoration" to include the removal of the NORM and the high chlorides. This was not a typical clause in an assignment of a mineral lease which makes the assignee liable for "plugging, abandoning and location restoration."

Bass argues that if it must pay Continental's defense cost, Continental is only entitled to the amounts it incurred in defending the lawsuit after Bass advised Continental that it would restore the property to regulatory standards. It contends that under the Letter Agreements, the lessees were only required to restore the property to "regulatory standards" and that the lessee's excessive and unreasonable use of the property prior to the effective date of the assignment caused the lessees to be obligated to restore the property to original condition.

Even assuming *arguendo* that Bass' obligation to defend Continental ended once the issue of restoration to regulatory standards was resolved, that obligation would not end at the point Bass announced it would restore the property. At the time when Bass made

8

the announcement, the Carmichaels still had a claim for restoration against all the defendants. The Carmichaels only approved of Bass' restoration plan in December of 2009 after they had settled with Bass in November of 2009. Bass did not complete the restoration until 2013. Since Continental and Cullen were excluded from the settlement, Continental had to defend the claims for restoration to regulatory standards until the restoration was completed to the satisfaction of the State or until Continental settled that claim with the Carmichaels. Continental settled with the Carmichaels in January of 2010. It was not until July of 2013 that the Office of Conservation officially approved the plugging, abandoning and restoration of the property.

The Court finds that the intent of the Letter Agreement is that Bass is obligated to defend and indemnify Continental for any cost relating to plugging, abandoning and remediation of the property as defined in the contract. Remediation of the property includes all liability relating to NORM and chloride contamination whether it was caused by operations before or after February 1, 2000. There was no proof at trial of any damages or liability to the Carmichaels that arose out of operations prior to the assignments other than the obligations relating to the remediation of the NORM and salt. Continental and Cullen are not therefore responsible for Bass' defense cost.

Bass has not proved that it should be indemnified for any of the money it paid to settle with the Carmichaels. There is no proof that the money paid to the Carmichaels was for Continental's or Cullen's share of any liability. Continental and Cullen were specifically excluded from the settlement and the Carmichaels reserved their claims against them. Continental executed its settlement with the Carmichaels in January of 2010. The Carmichaels never sued Cullen, but under the terms of the Bass settlement, they could still attempt to enforce any claims that they had against Cullen.

Accordingly, the Court finds that Bass has failed to prove that Continental or Cullen owe it defense or indemnity. Bass is obligated to pay Continental's cost to defend the main demand, which the parties previously stipulated to be $173,250.00. As previously ruled, Bass does not owe defense and indemnity to Cullen for its cost to defend the third-party claim to enforce the provisions of the indemnity agreement.

All costs of these proceedings are assessed to Bass.

(Footnotes omitted.)

We find no error in the trial court's ruling and adopt it as our own.

*Bass' Assignment of Error Three.*

In its third assignment of error, Bass claims that the trial court failed to consider its evidence concerning the $173,250.00 in attorney fees awarded to Continental for the defense of the main demand. Bass claims that the stipulation referenced by the trial court awarding Continental $173,250.00 in attorney fees was, "only agreed to after summary judgment on defense and indemnity had been granted in Continental's favor." The summary judgment that was the basis of the stipulation was reversed on appeal and based on the reversal, "Bass should not be bound by the limited stipulation at trial on the merits after the summary judgment that prompted its execution was overturned." We do not agree.

The record reflects that on August 22, 2011, a trial on the merits was scheduled on the issue of the amount of attorney fees owed by Bass to Continental in connection with the summary judgment granted in favor of Continental. In its pretrial memorandum, Bass contests the approximately $400,000.00 in attorney fees and costs sought by Continental. On the morning of trial, the parties filed a "Stipulation," signed by counsel for Continental and Bass.

The Stipulation provided that in December 2010, Continental settled the main demand with the Plaintiffs, and "does not seek reimbursement from Bass for that settlement amount." Continental further stipulated that it "seeks to recover from Bass only the attorneys' fees and costs incurred in defense of the main demand." The Stipulation references the one-day trial set for August 22, 2011, and then provides:

> **NOW THEREFORE**, Continental and Bass stipulate that the reasonable amount of attorneys' fees and costs incurred by Continental in the defense of the main demand is $173,250. Continental and Bass, thus, waive the one-day trial on the issue of the amount of attorneys' fees and costs that Continental is entitled to

recover from Bass and submits this stipulation as the only evidence of the amount of damages to which Continental is entitled.

Louisiana Civil Code Article 1853 governs the application of a judicial confession and does not change the law or substance of former La.Civ. Code art. 2291 (1870). Louisiana Civil Code Article 1853 states, "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

In *Carter v. D P & L Timber*, 06-714 (La. App. 3 Cir 11/8/06), 944 So.2d 732, *writ denied*, 07-302 (La. 3/30/07), 953 So.2d 72, a panel of this court addressed the issue of whether the amount of a worker's weekly wage, made in connection with settlement documents filed and approved by the Office of Workers' Compensation, constituted a judicial confession. The panel in *Carter*, as we must do in this case, was required to "consider whether the law was correctly applied to the facts of the case." *Carter*, 944 So.2d at 734.

The panel in *Carter* concluded that the statements made by Mr. Carter constituted a judicial confession and pursuant to La.Civ.Code art. 1853, it "has the effect of waiving evidence as to the subject of the admission - of withdrawing the subject matter of the confession from issue." *Carter*, 944 So.2d at 734.

Louisiana Civil Code Article 1853 also provides that a judicial confession "may be revoked only on the ground of error of fact." The trial court found in the summary judgment in favor of Continental and at trial on the merits that Bass owed Continental a defense and, thus, attorney fees and costs related to Continental's defense of the main demand by the Plaintiffs. The trial court then awarded Continental attorney fees of $173,250.00 as reflected in the August 22,

2011 Stipulation. Although the Bass assignment of error claims that the trial court refused to consider Bass' evidence on Continental's attorney fee claim, based on its Stipulation, Bass waived its evidence on the attorney fee claim and it was no longer at issue at the trial on the merits. Therefore, Bass' assignment of error three is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment. Costs of this appeal are assessed to The Bass Partnership and BOPCO, LP equally.

**AFFIRMED.**